710 F.2d 76
 33 Fair Empl.Prac.Cas. 977,
32 Empl. Prac. Dec. P 33,683
Thomas HAGELTHORN, Plaintiff-Appellant-Cross-Appellee,
v.
KENNECOTT CORPORATION, Defendant-Appellee-Cross-Appellant.
 No. 283, Docket 82-7349.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 29, 1982.
Decided June 14, 1983.
 
 V. Pamela Davis, New York City (Lane, Felcher, Kurlander & Fox, P.C., David L. Fox, New York City, of counsel), for plaintiff-appellant-cross-appellee.
 Henry P. Baer, New York City (Skadden, Arps, Slate, Meagher & Flom, Dorothy B. Symons, John P. Furfaro, New York City, of counsel), for defendant-appellee-cross-appellant.
 Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 On March 29, 1982, a jury of the Southern District of New York returned a verdict for the plaintiff, Thomas Hagelthorn. Finding that he had been fired because of his age by the defendant, Kennecott Corporation, in violation of the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634 (1976 & Supp. V 1981), the jury awarded him $82,350 in lost wages and benefits. Judge Griesa entered judgment for the plaintiff, reduced the award to offset pension payments paid by Kennecott to Hagelthorn, and doubled the remainder per 29 U.S.C. Secs. 216(b) (Supp. V 1981) & 626(b) (1976), which provide double liquidated damages for "willful" violations.
 
 
 2
 Kennecott Corporation appeals from orders denying its motions for summary judgment, a directed verdict, a judgment n.o.v., and a new trial. We affirm. The verdict was supported by sufficient evidence, and the trial court did not abuse its discretion in refusing to grant a new trial.
 
 
 3
 Hagelthorn appeals from that portion of the court's order reducing the judgment to offset pension payments. Finding no error in the reduction, we affirm. Hagelthorn also appeals from an order of March 29, 1982, denying his application for attorney's fees. We reverse that order and remand for determination of a reasonable fee.
 
 I. FACTS
 
 4
 Thomas Hagelthorn served as Kennecott's Office Services Manager from March 1960, until he retired twenty years later at the age of sixty-three. He and two assistants supervised thirty-five employees, who in turn provided duplicating, maintenance, delivery and other such services for the several hundred people at Kennecott's New York City headquarters.
 
 
 5
 In May, 1979, Kennecott announced that it was moving its headquarters to Stamford, Connecticut. An internal memorandum promised that all employees whose positions were transferred to Stamford would be invited to make the move, provided they were "in good standing", i.e., there was nothing to the contrary in their files. Hagelthorn's file contained one letter of commendation from the company president, dated May 1978, and nothing of adverse nature.
 
 
 6
 Sometime in late August or early September, 1979, before Kennecott had decided who in Office Services would be invited to Stamford, Hagelthorn met with Arthur Preisner, the Manager of Facilities and Services and Hagelthorn's immediate superior. Hagelthorn testified that he and Preisner
 
 
 7
 were discussing various problems and situations concerning the move. And he suddenly said that, well, your division, Office Services, is expected to go to Stamford to complete the move on or about January 1, 1980, but I would not go, I would be terminated because of my age.
 
 
 8
 According to Hagelthorn, Preisner attributed the decision to Edward Belanger, Senior Vice President of Finance. The defendant apparently concedes that Belanger had ultimate responsibility for the decision to terminate Hagelthorn.
 
 
 9
 According to the testimony of both Hagelthorn and Preisner, during the same conversation they discussed the possibility of Hagelthorn's retiring early, at the age of sixty-three, before the company moved to Stamford. Preisner agreed to ask Belanger whether Hagelthorn could receive a pension supplement to compensate for the smaller pension payments he would receive if he retired at that time rather than waiting until he was sixty-five.
 
 
 10
 Beyond this, Preisner's recollection of the August conversation was somewhat different. Preisner did admit speaking with Belanger about Hagelthorn a few weeks before. Indeed, he admitted that Belanger had told him that Hagelthorn "should be fired." Preisner denied, however, mentioning this to Hagelthorn. And he emphatically denied telling Hagelthorn that he would be fired for his age. Preisner observed at trial that it would have been "stupid ... to say anything like that," since age discrimination is unlawful.
 
 
 11
 Hagelthorn's version of Preisner's remarks was indirectly supported by two other witnesses. Mary LaVerme, Hagelthorn's secretary, testified that after Preisner left, "... Hagelthorn came out, and he said to me, 'Mr. Preisner said that I was not going to Connecticut because of my age.' " Joseph Carr, Hagelthorn's friend, provided similar testimony. He claimed that Hagelthorn had told him of Preisner's remarks in mid-September.
 
 
 12
 In October, 1979, Belanger signed letters of invitation for almost everyone in Office Services, except Hagelthorn. Allegedly because "everyone in the organization [was] complaining" about Hagelthorn, Belanger requested an assessment of Hagelthorn and a recommendation concerning his future employment. This task fell to Philip Feick, an Assistant Treasurer with supervisory authority over the Services and Facilities Division.
 
 
 13
 Feick, Preisner and Personnel Practices Manager Kenny met with Hagelthorn on October 23, 1979. Feick testified for the defendant that he began the meeting with some brief comments concerning complaints about Hagelthorn's performance and attitude. Hagelthorn interrupted with the claim that Preisner had told him he was to be fired because of his age. Preisner denied making such a statement. A heated exchange between Preisner and Hagelthorn followed, after which Kenny responded to Hagelthorn's inquiry into the availability of a pension supplement. She explained that Kennecott's policy was to provide supplements only for those employees who were forced to retire when their positions were eliminated. Since Kennecott would still require an Office Services Manager in Stamford, Hagelthorn's position would not be eliminated, and he would not be eligible for a supplement. Feick testified that after Kenny's remarks, he and Preisner discussed with Hagelthorn what came to be known as the "nine critical tasks," tasks that he and Preisner had previously outlined for assignment to Hagelthorn. Feick told Hagelthorn that if he completed the tasks satisfactorily, he would be invited to Stamford. Hagelthorn claims that he had no such understanding until Feick sent him a memo to this effect three days later.
 
 
 14
 Just after the meeting, Preisner expressed his opinion to Feick that Hagelthorn was preparing to bring an age discrimination suit. Preisner wrote a memo for the file to this effect two days later. Plaintiff's theory at trial was that everything Kennecott did after the October 23 meeting was to prepare for that anticipated suit and to rationalize a decision already made.
 
 
 15
 At trial, the parties disputed the extent to which the "nine critical tasks" were completed as well as the extent to which some of the tasks were outside the scope of responsibility or the competence of an office services manager. In any event, at the end of the probationary period, Feick reported that Hagelthorn's performance had been unsatisfactory. Accordingly, in a memorandum of January 23, 1980, he recommended that Hagelthorn be terminated, with a slight qualification. He noted that his recommendation was:
 
 
 16
 based on the Company's previous position that a supplemental pension would not be approved since Mr. Hagelthorn's position was to be transferred to Stamford. Based upon my revision of the Facilities and Services Department which we have discussed, the position of Manager of Office Services has totally been eliminated. In consideration of Mr. Hagelthorn's near 20 years' service to this organization, I will recommend to the Management Development Committee reconsideration of this request for supplemental benefits.
 
 
 17
 Feick testified that as a consequence of his recommendation, technically speaking, Hagelthorn had not been fired. He had retired. Feick noted Hagelthorn would have been fired even if his job had not been eliminated. However, the elimination had afforded Kennecott the opportunity to increase Hagelthorn's pension benefits "as substantially as we could."
 
 
 18
 It was not, however, Feick's position that the desire to increase Hagelthorn's pension had motivated the reorganization of management in the Office Services Department. Rather, Feick explained that Hagelthorn's two assistant managers didn't seem to be managing and that Office Services had too many managers per employee.
 
 
 19
 Hagelthorn attempted to show that, notwithstanding the complex changes reflected on Kennecott's personnel charts, Hagelthorn's position had not actually been "eliminated." His two assistants had simply taken over his job. Testimony was elicited from Preisner that Hagelthorn's former assistant was the "senior office services man" in the Connecticut office and that five of his six tasks had previously been assigned to Hagelthorn.
 
 
 20
 In addition to challenging Hagelthorn's version of Preisner's allegedly discriminatory remarks, Kennecott attempted to establish its long-standing unhappiness with Hagelthorn. Kennecott introduced testimony to show that Hagelthorn had been insubordinate one or two years earlier when Preisner was first promoted above Hagelthorn and that as a consequence Hagelthorn had been denied a raise for six months. There was also evidence of complaints over the years about Hagelthorn's attitude and performance. Preisner testified that he had been dissatisfied with Hagelthorn's assistance in preparation for the move to Stamford. Feick testified about Hagelthorn's unsatisfactory probation performance. In addition, Kennecott introduced statistical evidence to establish that its termination decisions during the reorganization did not have a disparate impact on older employees.
 
 
 21
 After the plaintiff had rested, the defendant's motion for a directed verdict was denied. At the close of evidence, the court submitted to the jury the simple question whether Kennecott had violated the ADEA.[1] The court instructed the jurors that they could find for the plaintiff even if they determined that several factors influenced Kennecott's decision, so long as they also found it more likely than not that "but for this factor of age, plaintiff would not have been terminated." After deliberating for a day and a half, the jury found, in answer to special interrogatories, that "age was a determinative factor in Kennecott's decision to terminate plaintiff's employment" and that "the amount of loss of wages and other benefits resulting to plaintiff from the termination" was $82,350.
 
 
 22
 The court denied motions for a judgment n.o.v. and a new trial. It reduced the award for pension payments Kennecott had made to Hagelthorn and then doubled the remainder on the ground that Kennecott had willfully violated the ADEA. See 29 U.S.C. Secs. 216(b) & 626(b). These appeals followed.
 
 
 23
 II. DEFENDANT'S MOTION FOR A DIRECTED VERDICT
 
 A. Prima Facie Case
 
 24
 Kennecott first argues that the court erred in denying it a directed verdict because Hagelthorn failed to make out a prima facie case of discrimination under the four part standard of Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 1094 & n. 6, 67 L.Ed.2d 207 (1981).[2] We disagree. Hagelthorn made out a prima facie case in a manner we have approved before, by offering "direct proof" of discrimination--evidence that "the employer had told the employee that he was being fired because of his age." Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 921 (2d Cir.1981). Burdine, decided the same day as Stanojev, is not to the contrary. See Garner v. Boorstin, 690 F.2d 1034, 1036 & n. 4 (D.C.Cir.1982).
 
 
 25
 In Burdine, the Supreme Court looked to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as this court had done in Stanojev, for "an appropriate model for a prima facie case of racial discrimination." Burdine, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6. Under McDonnell Douglas the plaintiff must show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. The defendant argues that Burdine made two of the McDonnell Douglas requirements invariant elements of a prima facie case--that every ADEA plaintiff must show that he is qualified for an available position. See Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. Moreover, defendant argues, a plaintiff's own self-serving assessments are insufficient to establish prima facie qualification.
 
 
 26
 However, Burdine itself noted that the McDonnell Douglas standard "is not inflexible." 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6. Thus, we believe we are still required to approach each situation on a "case-by-case basis," H.R.Rep. No. 805, 90th Cong., 1st Sess., reprinted in 1967 U.S.Code Cong. & Ad.News 2213, 2220, always mindful that the central question is whether plaintiff has presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a determinative factor in the employer's decision. U.S. Postal Service v. Aikens, --- U.S. ----, ----, 103 S.Ct. 1478, 1480, 75 L.Ed.2d 403 (1983); Douglas v. Anderson, 656 F.2d 528, 532 (9th Cir.1981). Moreover, we find nothing in Burdine suggesting that the Court was abandoning its position in Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). There the Court suggested that McDonnell Douglas had relied on proof of qualification for an available job in order to compensate for the typical unavailability of direct proof of discrimination. Id. at 358 n. 44, 97 S.Ct. at 1866 n. 44; Loeb v. Textron, Inc., 600 F.2d 1003, 1014 & n. 12 (1st Cir.1979); see also Furnco v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Where direct proof is available, there is no reason to "adhere stubbornly to [McDonnell Douglas's] specific formulae when common sense dictates the same result on the basis of alternative formulae." Grant v. Bethlehem Steel, 635 F.2d 1007, 1014 (2d Cir.1980), cert. denied, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981).
 
 
 27
 Hagelthorn presented direct evidence of discrimination. He testified that after twenty years in a position not likely to be totally eliminated, he was told he would be fired because of his age. If the jury believed this testimony then they might reasonably accept that Kennecott thought Hagelthorn was "unqualified," and nevertheless conclude that but for his age, he would not have been fired. Because Hagelthorn was relying on this direct evidence, and not merely trying to create an inference of an illegitimate reason by eliminating "all legitimate reasons ... as possible reasons for the employer's action," Furnco v. Waters, 438 U.S. at 577, 98 S.Ct. at 2950, he was not required to eliminate altogether the possibility that Kennecott regarded his performance as below its legitimate expectations.[3] Cf., Loeb v. Textron, 600 F.2d at 1014 (requiring such proof when evidence of discrimination was circumstantial).
 
 
 28
 Similarly, Hagelthorn was not required to prove, as part of his prima facie case, that he was replaced by any employee or that his job continued to exist as such after the reorganization. Failure to require such proof does not, as Kennecott asserts, deprive the employer of "the right to restructure his organization to reflect his perception of the demands of his business and the opportunities afforded by new technology." We merely hold that even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons, see Williams v. General Motors, 656 F.2d 120, 129-30 (5th Cir.1981), cert. denied, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), just as it may not fire unqualified employees who would not be fired as such but for their age.
 
 
 29
 B. Proving that the Employer's Explanation is Pretext
 
 
 30
 Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the employee's termination. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093 (quoting McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824). Kennecott met this burden by claiming that it terminated Hagelthorn because it was dissatisfied with his performance and attitude. The burden then shifted back to Hagelthorn to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.
 
 
 31
 As a second ground for a directed verdict, Kennecott argues that Hagelthorn could not prove that its dissatisfaction with him was a mere pretext "in the face of his admissions that he was thoroughly disliked, was the butt of constant complaints, and had been denied a raise in April 1978." We do not agree.
 
 
 32
 Hagelthorn did not concede that Kennecott was dissatisfied with his performance. Rather, he testified that he and his department played the role of scapegoat for all the inconveniences of office life; whenever his department answered four calls for service, the fourth person invariably took umbrage at the priority given his or her request. Hagelthorn's secretary, Mary LaVerme, testified that it was the norm for office services managers to be disliked. Thus Hagelthorn's statement that he received a good deal of unjust abuse did not constitute an admission that, as office managers go, he was considered inadequate by Kennecott. Indeed, plaintiff argued that given the nature of the job, Kennecott would not fire him merely because he was unpopular.
 
 
 33
 Moreover, Kennecott's argument misconceives Burdine's requirement that the plaintiff prove the employer's explanation was a pretext. The meaning of this requirement must be understood in the context of plaintiff's ultimate burden of showing that age was a "determinative factor." Plaintiff is not required to show that age was the sole factor in the employer's decision. Geller v. Markham, 635 F.2d 1027, 1035 (2d Cir.1980), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). Hence, to prove that "the legitimate reasons offered by the defendant were not its true reasons," Burdine, supra 450 U.S. at 253, 101 S.Ct. at 1093, Hagelthorn was not required to show that the reasons offered were false, but that they were not Kennecott's only reasons and that age made a difference. Golomb v. Prudential, 688 F.2d 547, 551 (7th Cir.1982); Parcinski v. Outlet Co., 673 F.2d 34, 36 (2d Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983).
 
 
 34
 The jury was entitled to take Preisner's alleged statements as evidence that age had been a factor in Kennecott's decision. And on this basis, the jury was entitled to conclude that Kennecott's dissatisfaction, even if genuine, was a pretext in the sense that it purported to be a complete explanation and was not, for age was a causal factor as well.
 
 
 35
 In sum, because Hagelthorn made out a prima facie case by offering direct proof that, after twenty years on the job, he was terminated on the basis of age, and because in this case the jury could have inferred from Hagelthorn's evidence that Kennecott's explanation was a pretext, we affirm the district court's decision to deny a directed verdict.
 
 
 36
 III. JUDGMENT N.O.V.
 
 
 37
 The district court must enter a judgment n.o.v. only when, viewing the evidence in the light most favorable to the non-moving party, "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." Mattivi v. South African Marine Corp., 618 F.2d 163, 168 (2d Cir.1980). The defendant argues that under either standard it was error to deny its motion for judgment n.o.v. We cannot agree.
 
 
 38
 We cannot say that the plaintiff's evidence of discrimination was so thin that the jury must have been speculating when it found that age was a determinative factor in the discharge. The jury had before it Hagelthorn's report of Preisner's statement that he would be fired because of his age. This report was supported by LaVerme and Carr, both of whom testified that Hagelthorn had recounted Preisner's remarks at a time when Hagelthorn had had no other reason to fear for his job and no reason to invent such a story. The defendant's attempts to shore up Preisner's version of the crucial facts and to discredit the testimony of Hagelthorn, LaVerme and Carr, merely went to credibility, raising a question properly left to the jury.
 
 
 39
 Nor can we agree with Kennecott's argument that the evidence supporting its explanation for the discharge was so great as to compel acceptance. Kennecott points to the evidence that Hagelthorn was not liked, that people complained about him and his department, that he had been denied a raise in 1978 because of his poor reaction to Preisner's promotion, and that he performed unsatisfactorily on the "nine critical tasks" during his probationary period. Kennecott also notes that Belanger, the man ultimately responsible for Hagelthorn's termination, claimed to have heard numerous complaints about Hagelthorn. Finally, Kennecott points to its statistical evidence tending to show that its relocation policy did not have a disparate impact on older employees.[4] Kennecott argues that the jury could have found for Hagelthorn in the face of this evidence only by "inferr[ing] that Kennecott ignored the undisputed reasons for terminating his employment and focused on his age instead" (emphasis added). This argument is twice mistaken.
 
 
 40
 First, as we have noted above, although age must be a determinative factor, it need not be the only determinative factor. Ordinarily where there is evidence of both a discriminatory reason and a legitimate reason for termination, it is for the fact-finder to determine whether it has been established by a preponderance of the evidence that the plaintiff would not have been fired but for his age.
 
 
 41
 Second, Kennecott's reasons for terminating Hagelthorn were not in fact undisputed. Hagelthorn attempted to establish pretext by persuading the jury that Kennecott's explanation was simply "unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. At trial, plaintiff emphasized the inconsistencies and weaknesses of Kennecott's explanation; and in light of these, we cannot say that the evidence of Kennecott's dissatisfaction was so overwhelming that fair minded jurors could only have concluded that Hagelthorn would have been fired regardless of his age.
 
 
 42
 For instance, the thrust of Kennecott's case against Hagelthorn was that, although he got along well with his staff he also got along poorly with his superiors. However, Belanger, the alleged decision maker, explained in rather colorful language that the problem with Hagelthorn was, while he was obsequious with his superiors, he got along poorly with his staff.[5] Belanger "knew" that people in Hagelthorn's department were "very unhappy," because Preisner reported a very high turnover rate in Hagelthorn's department. However, at trial, Preisner denied that there was a high turnover rate and denied ever telling Belanger anything to the contrary. Belanger's claim that people were always complaining about Hagelthorn conflicted with Feick's survey, which had revealed no particular complaints about office services or about Hagelthorn. Of course, nothing in the ADEA prohibited Belanger from firing Hagelthorn on the basis of erroneous beliefs. Nevertheless, the jury could have taken the extent to which Belanger's "reasons" were wide of the mark as evidence that they were manufactured to cover discrimination. Loeb v. Textron, Inc., 600 F.2d at 1012 n. 6 ("[t]he reasonableness of the employer's reasons may of course be probative of whether they are pretexts").
 
 
 43
 There was also considerable dispute as to the adequacy of Hagelthorn's performance on the "nine critical tasks." The conflicting evidence did not mandate a finding that Hagelthorn's probationary performance was the basis of his termination. As to the remaining evidence, nothing prevented the jury from accepting Hagelthorn's arguments that the defendant was exhuming long dormant complaints as a pretext to cover a discriminatory motive, and that, since office services personnel were never popular, Kennecott would not, other things being equal, fire an Office Services Manager merely because he was not liked.
 
 
 44
 Because there was sufficient evidence to support the verdict, we affirm the district court's denial of a judgment n.o.v.
 
 IV. DEFENDANT'S MOTION FOR A NEW TRIAL
 
 45
 Immediately after the jury's verdict, the district court stated its opinion that the verdict was against the weight of the evidence. The court said:
 
 
 46
 [T]his kind of case allows a plaintiff to come out of a room after a conversation, distort that conversation, and make a case out of it, tell his secretary ... tell a bunch of other people, as he alleges, and then he has a case. I see no reason for termination because of his age. He wasn't on an executive level where they were needing young, dynamic people. He was on a very junior level....
 
 
 47
 * * *
 
 
 48
 * * *
 
 
 49
 ... I think a verdict has been rendered which is against the great weight of the evidence, but I don't think that it is something where the jury did not have the minimum amount required to reach a verdict.
 
 
 50
 However, four days later, the court had this to say:
 
 
 51
 I have considered the matter further since my statements following the verdict. The evidence, both direct and circumstantial, in support of a finding of age discrimination was sufficient to support the verdict. One can disagree with that verdict. But the verdict should stand. No legitimate purpose would be served by a new trial. The motion [for a new trial] is denied.
 
 
 52
 In view of our discussion of the sufficiency of the evidence, we find no abuse of discretion in the court's final considered decision to deny a new trial.
 
 V. WILLFULNESS
 
 53
 In addition to an award of back pay, the ADEA provides for "an additional equal amount" as liquidated damages "in cases of willful violations." 29 U.S.C. Secs. 216(b) & 626(b). The defendant argues that the district court erroneously found that Kennecott's violation was "willful" on the sole ground that Kennecott was aware of the ADEA's requirements. Such a standard would, defendant argues, render liquidated damages virtually automatic.
 
 
 54
 This issue has split the courts of appeals. The Fourth and Fifth Circuits have held that a violation of the act is willful if the defendant "knows or has reason to know that his conduct is governed by [the Act]". Crosland v. Charlotte, 686 F.2d 208, 217 (4th Cir.1982); Hedrick v. Hercules, 658 F.2d 1088, 1096 (5th Cir.1981). The Seventh Circuit has adopted a more stringent willfulness standard, requiring that the employer know or have reason to know that its conduct violates the act. Syvock v. Milwaukee Boiler Manufacturing Co., 665 F.2d 149, 156 (7th Cir.1981).
 
 
 55
 Because, as the district court noted, there was sufficient evidence of willfulness under either standard, we do not believe it necessary to resolve this question. The uncontradicted evidence showed that Kennecott knew that a decision to fire Hagelthorn because of his age would violate the law. There is no suggestion that anyone at Kennecott thought that age could be legitimately considered as, say, a bona fide occupational qualification; and, since this is a disparate treatment case, there is no suggestion that the discrimination was inadvertent. See Goodman v. Heublein, Inc., 645 F.2d 127, 131 & n. 6 (2d Cir.1981). We agree with the district court, that if in these circumstances Kennecott decided to fire Hagelthorn because of his age, then Kennecott voluntarily and knowingly violated the law.
 
 VI. THE JURY INSTRUCTION
 
 56
 Defendant raises numerous objections to the court's charge. Most of these objections are raised for the first time on appeal. On March 25, 1982, the court discussed proposed instructions with counsel. Only four questions were discussed: (1) whether the court should instruct the jury on plaintiff's burden to establish a "prima facie case"; (2) whether the court should instruct the jury as to the "shifting burden of proof" set out in Burdine; (3) whether the court should instruct the jury that the plaintiff must prove that he was qualified; and (4) what language the court should use to elucidate for the jury the meaning of a "determinative factor."
 
 
 57
 The defendant never called the court's attention to any other aspects of the charge. Immediately after the judge charged the jury, he retired with counsel to the robing room to find out whether they had "any points that should be added or corrected as far as my instructions are concerned." Counsel for defendant stated that he had "[n]o problem at all, your Honor." Counsel thus failed to apprise the district court of the substance of and the grounds for many of the objections raised here. Because nothing in the charge rises to the level of plain error requiring reversal even in the absence of objection, see Cohen v. Franchard Corp., 478 F.2d 115, 124 (2d Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973), we believe that counsel has failed to preserve for appeal all those objections to aspects of the charge not discussed during the conference.
 
 
 58
 As to the four objections raised at the conference, we find it unnecessary to decide whether the defendant lost the right to appeal on these grounds by failing to renew its objections after the charge was read to the jury, as required by Fed.R.Civ.Proc. 51, for the defendant's objections on these points are without merit.
 
 
 59
 We agree with the district court that the defendant's proposed instructions, couched in such lawyerly cant as "prima facie case" and "shifting burden of proof," would only have confused the jury.[6] Neither Burdine nor "McDonnell Douglas was ... written as a prospective jury charge; to read its technical aspects to a jury ... will add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination." Loeb v. Textron, Inc., 600 F.2d at 1016. We agree with the First Circuit that "the advantages of trial by jury lie in utilization of the jurors' common sense," and that this advantage would be lost by "engulfing a lay jury in the legal niceties" of Burdine and McDonnell Douglas. Loeb, 600 F.2d at 1016.
 
 
 60
 Defendant argues that as a result of the failure to instruct the jury on the elements of a prima facie case, "the jury never understood that it was Hagelthorn's burden to prove that he was qualified, not Kennecott's to prove that he wasn't." We do not believe the jury was misled. First, we agree with the district court that Hagelthorn's basic qualifications--his knowledge of business practices and machines, his education, his experience and his basic intelligence--were not at issue. See Loeb v. Textron, 600 F.2d at 1013 n. 10. Second, as we noted above, although Kennecott was not required to prove its claim that Hagelthorn's poor performance and attitude rendered him unqualified for his position, neither was Hagelthorn required to disprove this claim. He was required to prove only that, even if performance and attitude were factors in his termination, nevertheless he would not have been fired but for his age. In these circumstances, asking the jury to make an isolated finding that Hagelthorn was "qualified" would have been confusing.
 
 
 61
 Finally, the defendant objects that the court gave the jury no meaningful assistance on the concept of a "determinative factor." See Bentley v. Stromberg-Carlson, 638 F.2d 9, 11 (2d Cir.1981) (error to provide no explanation for "determinative factor"). The court told the jurors that if they believed there were several factors, including age, in Kennecott's decision, then they could return a verdict for the plaintiff only if they concluded that "but for this factor of age, plaintiff would not have been terminated" (emphasis added). We believe the charge set forth in simple terms the two aspects of a "determinative factor" crucial to the jury's understanding: first, that there can be more than one determinative factor in the employer's decision; second, that age must be a factor in the absence of which the plaintiff would not have been discharged. Indeed, we believe the "but for" formulation used here is clearer and more readily understood by lay jurors than the "factor that made a difference" charge we approved in Geller v. Markham, 635 F.2d at 1035 (also approving the "but for" formulation).
 
 
 62
 In sum, we believe the charge as a whole was reasonably tailored to give the jury adequate guidance for resolving the issues.
 
 VII. ATTORNEY'S FEES
 
 63
 After the verdict, the plaintiff moved for an award of attorney's fees. When the court inquired into the applicable standard, plaintiff's counsel responded that fees were within the court's discretion. The court understandably construed this remark as indicating that the decision whether to award any fee at all was within its discretion. The court denied the motion.
 
 
 64
 However, the court had no discretion to deny fees to a prevailing plaintiff; its discretion extended only to the amount allowed. Section 626(b) of the ADEA incorporates by reference that portion of the Fair Labor Standards Act providing that "[t]he court ... shall, in addition to any judgment awarded to the plaintiff ..., allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. Sec. 216(b) (emphasis added). Since an award of fees is mandatory under Sec. 216(b), Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 415 & n. 5, 98 S.Ct. 694, 697 & n. 5, 54 L.Ed.2d 648 (1978); Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1191 n. 18 (5th Cir.1979), it is mandatory under the ADEA. Rodriguez v. Taylor, 569 F.2d 1231, 1244 (3rd Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978).
 
 VIII. THE SET OFF
 
 65
 The district court credited Kennecott for pension benefits it had paid to Hagelthorn during the period for which the jury awarded back pay. The parties apparently agree that the jury's award represents back pay for the 30.88 month period beginning in May 1980.
 
 
 66
 Hagelthorn elected to receive his pension and the special pension supplement discussed above in a lump sum rather than in monthly payments. Accordingly, in May 1980 Kennecott had paid Hagelthorn approximately:
 
 
 67
 1) $57,000, representing the present value (in May 1980) of the monthly ordinary pension payments to which Hagelthorn was entitled by virtue of retiring at sixty-three years of age, plus
 
 
 68
 2) $4,500 representing the present value of the monthly supplemental pension payments which were to bring Hagelthorn's total monthly payment up to that to which he would have been entitled had he retired two years later at the age of sixty-five, plus3) $10,500 representing the present value of the monthly "social security" payments Kennecott agreed to pay Hagelthorn until he turned sixty-five, at which point he would collect an equivalent amount from the Social Security Administration.
 
 
 69
 The district court ordered that Kennecott be credited with approximately (1) $16,500, representing the present value (in May 1980) of the first 30.88 monthly ordinary pension payments, (2) $1,500, representing the present value of the 30.88 monthly supplemental payments, and (3) $10,500, representing the present value of the social security supplement.
 
 
 70
 Hagelthorn agreed below that Kennecott was entitled to credit for the entire $10,500 social security supplement and on this appeal offers no reason why that concession was erroneous. Plaintiff also apparently concedes that the $1,500 reduction in the lump sum pension supplement and the $16,500 reduction in the lump sum ordinary pension accurately represent the present value of the first 30.88 monthly supplemental and monthly ordinary pension payments. However, Hagelthorn challenges the propriety of attributing any portion of the lump sum pension payments to the particular period for which he was awarded back pay. He notes that the lump sum payments reflected the aggregate value of all the monthly pension payments he was entitled to receive for life, regardless of when he actually retired. Hagelthorn then apparently assumes that he would have received at least as large a lump sum payment had he retired at the age of sixty-five as he actually received when he retired at sixty-three. Thus, the argument goes, any attempt to attribute some of that lump sum to the period between Hagelthorn's sixty-third and sixty-fifth birthdays leaves him now with less than he would have received had Kennecott not fired him and had he retired in due course at sixty-five.
 
 
 71
 Plaintiff's assumption that given equal monthly payment rates he would receive the same lump sum payment regardless of when he retired is erroneous. Since the lump sum payment reflected the present value of the total monthly payments Hagelthorn was expected to receive, based on actuarial mortality tables, and since Hagelthorn had a greater life expectancy at sixty-three than at sixty-five, he received a correspondingly greater lump sum payment when he retired at sixty-three than he would have received had he retired at sixty-five. Kennecott was entitled to credit for the difference between the two amounts. Thus, the district court properly rejected plaintiff's arguments that Kennecott should be credited for no portion whatsoever of the lump sum pension and supplemental pension payments. Since the plaintiff does not question the calculations used here to determine the difference between the lump sum he received at sixty-three and the sum he would have received at sixty-five, we do not pass on those calculations. Accordingly, we find no error in the reductions in the award.
 
 
 72
 The judgment is affirmed; the case is remanded for determination of a reasonable attorney's fee.
 
 
 
 [1]
 The court declined to submit the plaintiff's liquidated damages claim to the jury. The court noted that if Kennecott had violated the Act, then there was no question on the evidence presented but that Kennecott had knowingly violated the law. Thus, if the jury found a violation of the Act, then even under the strictest standard plaintiff had established a "willful" violation and was entitled to liquidated damages
 
 
 [2]
 Our resolution here and in Part II(B) infra of defendant's arguments on its appeal from the denial of a directed verdict makes it unnecessary to address independently defendant's identical arguments on its appeal from the denial of summary judgment
 
 
 [3]
 As we discuss in Parts II(b) and III, infra, plaintiff also attempted to persuade the jury that Kennecott's explanation was pretextual by showing that management's alleged dissatisfaction was manufactured and without adequate basis in fact
 
 
 [4]
 Defendant's statistical evidence that Kennecott's relocation decisions did not generally have a disparate impact presented the jury with grounds for inferring that Kennecott probably did not take age into account in any of its decisions. However, this inference was not compelled, and the evidence provides no basis for taking the discriminatory treatment question from the jury
 
 
 [5]
 Parts of Belanger's deposition testimony were read at trial. Belanger testified that:
 Tom Hagelthorn ... does not do anything to get his boss mad but dumps all over everyone else in the organization....
 * * *
 ... There is a saying in business, very bluntly, the s--- flows downhill, and Tom Hagelthorn was probably standing at his level throwing it downhill at people below his level.
 
 
 [6]
 The discussion between counsel and court focused generally on the felicity of instructing the jury on Burdine's legal terminology. Counsel never suggested to the court that the substance of the proposed charge be offered without the objectionable terminology, nor after the charge was given to the jury, did counsel object to the failure to charge the jury on the substantive elements of the proposed charge. Nevertheless, counsel objected for the first time on appeal that the jury was never told that the employer's explanation for its decision "does not have to be a valid one ... or one that the jurors would agree with," and that the jury was not told that the defendant did not have to prove that it was "actually motivated by the reason it gave in court." Assuming, without deciding, that these issues are properly before us, we note that the court instructed the jury that the plaintiff was not entitled to recover unless age was a determinative factor, even if the jury disagreed with the defendant's reason, "even though you don't like what Kennecott did, even though you might think it was unfair or arbitrary or unjust or you might sympathize with the plaintiff." Contrary to defendant's assertion, nothing in the charge could have misled the jury to conclude that Kennecott had "to prove that it acted in a non-discriminatory manner."