**Giuseppe LOMBARDO, Plaintiff,**

v.

**COLUMBIA DENTOFORM CORPORATION,**
**Defendant.**

**No. 83 Civ. 7987 (EW).**

United States District Court,
S.D. New York.

Dec. 13, 1984.

---

Dickerson, Reilly & Mullen, New York City, for plaintiff; John H. Reilly, Jr., New York City, of counsel.

Holtzmann, Wise & Shepard, New York City, for defendant; Nicholas Gimbel, Gerald T. Hathaway, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Guiseppe Lombardo, sued his employer, Columbia Dentoform Corporation ("Columbia"), a subsidiary of Syntex Dental Products, Inc. ("Syntex"), upon allegations that his discharge as production manager of Columbia violated the Age Discrimination in Employment Act ("ADEA").[1] The defense was that plaintiff's discharge was for good cause based principally upon his abusive conduct toward employees under his supervision.

■ To establish a *prima facie* case, plaintiff was required to offer evidence that at the time of his discharge he was qualified to continue holding his job and that despite his qualifications he was discharged by the defendant and replaced by a younger person.[2] Thereupon the burden shifted to defendant to articulate some valid reason other than age discrimination that accounted for the discharge. If defendant carried this burden, then it shifted back to plaintiff to establish that the reason assigned was not a true reason but merely a pretext for the discharge and that age was a determinative factor in his termination.[3]

The jury returned a special verdict on the disputed issues and found that plaintiff had sustained his burden of proof: (1) that age was a determinative factor in his discharge and he should be awarded damages in the sum of $66,500 for lost wages; (2) that his discharge was willful and entitled him to liquidated damages in the sum of $66,500; and (3) that his loss of future wages amounted to $175,000. In addition, plaintiff was awarded counsel fees in the sum of $40,000 plus disbursements of $1,626.45, so that the total award amounts to $349,626.45.

Columbia now moves pursuant to Fed.R. Civ.P. 50 and 59 for judgment in its favor notwithstanding the jury verdict ("n.o.v.") or, in the alternative, for a new trial on the issues of liability and willfulness.

■ The standard in this circuit applicable to a motion for judgment n.o.v. is whether " 'the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor.' "[4] More recently our Court of Appeals stated the standard as follows:

> A district court may enter a judgment notwithstanding the verdict when, viewing the evidence in the light most favorable to the non-moving party, "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him."[5]

■ The standard applicable to a motion for a new trial is whether "it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is es-

---

1. 29 U.S.C. §§ 621–34.

2. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 1093–94 & n. 6, 67 L.Ed.2d 207 (1981); *Haskell v. Kaman Corp.,* 743 F.2d 113, 119 n. 1 (2d Cir.1984); *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 80 (2d Cir.1983); *Nash v. Jaqueline Cochran, Inc.,* 548 F.Supp. 676 (S.D.N.Y.1982).

3. *Burdine,* 450 U.S. at 254–256, 101 S.Ct. at 1094–95; *Haskell,* 743 F.2d at 119 n. 1; *Hagelthorn,* 710 F.2d at 81–82.

4. *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161, 1162 (S.D.N.Y.1983) (quoting *Pena v. Brattleboro Retreat,* 702 F.2d 322, 323 (2d Cir.1983) (quoting *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 573 (2d Cir.), *cert. denied,* 459 U.S. 838, 908, 103 S.Ct. 86, 213, 74 L.Ed.2d 80, 170 (1982) ) ).

5. *Haskell,* 743 F.2d at 120 (quoting *Mattivi v. South African Marine Corp.,* 618 F.2d 163, 168 (2d Cir.1980) ); *see Brink's Inc. v. City of New York,* 546 F.Supp. 403, 406–07 (S.D.N.Y.1982), *aff'd,* 717 F.2d 700 (2d Cir.1983).

sentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not." [6] In applying this standard, our Court of Appeals observed:

> Unlike a motion for judgment notwithstanding the verdict, a new trial motion may be granted even if there is substantial evidence to support the verdict. The trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner.[7]

■ From the perspective of each of the foregoing standards that govern the defendant's alternative motion, we consider the evidence. In very broad terms, the basic evidence upon which plaintiff relied to establish his claim that age was a causative factor in his discharge was that in June 1982 defendant imposed a freeze on hiring new employees and proposed a reduction of the work force by 12 to 15 persons during the next fiscal year; that when he was discharged at age 58 his annual salary totalled $40,500 plus benefits in an amount equal to 20% of his annual salary and following his discharge he was replaced by a younger employee, John Marra, age 39, whose salary totalled $26,000; and therefore that the company was motivated by the substantial cost savings in discharging him and replacing him with Marra. In addition, plaintiff relied upon a statement made to him in the summer of 1981 by Floyd Albert, who was president of Columbia and plaintiff's superior, that both were "getting old" and should look to the future "for the good of the company" and "should start looking for people to replace us." [8] Finally, as discussed in greater detail hereafter, plaintiff relied upon a favorable written evaluation of his work as production manager dated February 2, 1983 which Albert had approved.

Preliminarily, it is observed there can be no serious dispute that, commencing with plaintiff's initial employment by Columbia's predecessor in 1951 and through the years as he advanced and finally was promoted to production manager, plaintiff was fully qualified to perform his job. However, the evidence offered by defendant to sustain its defense that plaintiff was discharged for good cause established that his qualification was undermined by his acts, conduct, and attitude toward employees under his supervision, which assumed critical proportions in late 1981 or early 1982.

As to plaintiff's claim that the hiring freeze was a motivating factor in his termination, Syntex officials who were responsible for the decision not only categorically denied the charge but testified that the cost containment policy was effectuated only through attrition—that is, by not replacing employees who voluntarily terminated their employment. Although plaintiff was in no position to dispute the testimony of defendant's officials that the cost containment policy was carried out only through attrition, the jury had before it his testimony of Floyd Albert's statement about getting old and the need to look to the future for the good of the company. Moreover, while it is true, as the defendant points out, that this statement is ambiguous and was not made by the Syntex officials who made the decision to discharge Lombardo and whose intent was at issue, the jury also had before it circumstantial evidence to permit a reasonable inference that age was a factor in the decision. There was undisputed evidence that plaintiff was replaced by John Marra at a lower salary and that Marra's vacated position was not refilled, a turn of events that resulted in substantial savings to the defendant at a time when it had adopted a cost containment policy. Whether or not the defendant had legitimate reasons for firing Lombardo is beside the point; plaintiff need only have shown that age was also a

---

**6.** *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978) (quoting 6A Moore's Federal Practice ¶ 59.08[5], at 59–160 to 59–161 (1973) (footnotes omitted) ).

**7.** *Id.* at 683–84 (citations omitted).

**8.** Record at 83.

factor in the decision to discharge him.[9] In light of the foregoing, it cannot be said that there was "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture"[10] or that the evidence viewed in the light most favorable to the plaintiff "reasonably permits only a conclusion" in favor of Columbia.[11] Accordingly, the motion for judgment in favor of defendant n.o.v. is denied.

As to the defendant's alternative request for a new trial, however, a totally different view of the evidence should be taken in light of the testimony defendant relied upon to establish its claim that plaintiff's discharge was made in good faith based principally upon his abusive conduct toward employees over a long period prior thereto. Some six or seven employees testified that plaintiff repeatedly referred to them as well as other employees using such epithets as "Puertos," "dumb refugee," "nigger," "stupid nigger," "stupid bastard," "Jamaican jackass," and "dumb West Indian." Evidence was presented that plaintiff referred to the personnel manager whose duties included improving employee relations as a "Puerto Rican whore" and "the bitch upstairs" and told her that she "should be home having babies."[12] Also, there was testimony that plaintiff was resistant to and failed to cooperate in a management training program that Syntex inaugurated for the purpose of improving management-employee relations.

Plaintiff's discharge on March 24, 1983 must be considered in the context of events prior thereto that bear on whether he met his ultimate burden of proof that defendant's assigned reason for his discharge was pretextual.

Plaintiff, in resisting both branches of defendant's motion, relies heavily upon the performance evaluation approved by Floyd Albert in early February 1983. However, the defendant's verbal abuse of employees reached such proportions that it was the subject of a special conference on February 18, 1983 at which Ron Victor, a top official of Syntex, expressed concern to plaintiff that he was not managing in "the Syntex way" and warned him that his position was in jeopardy if he continued the conduct complained of by employees. At this session he was also warned not to take retaliatory action against complaining employees.

When plaintiff was discharged on March 24, by Ron Victor, the latter referred to the warning session and the matters that had been of concern to management. In addition, plaintiff was told that he had been drinking on the premises in violation of company rules and had admitted on one occasion that he may have been intoxicated. Plaintiff denied that he had been intoxicated but did not deny that there had been drinking, which he excused or minimized because it had occurred at a farewell party for an employee retiring after many years of service. Plaintiff contended that the incident had been exaggerated by management and was an added pretext for his discharge since no action was taken against the plant manager who also participated in the event.

There was also evidence that subsequent to the warning meeting on February 18, 1983 plaintiff had threatened a number of employees who had made complaints about him with $1 million lawsuits and that his abusive conduct had not abated. As to the favorable performance evaluation dated February 2, 1983 and approved by Albert, proof was offered that personnel executives at a higher level than Albert, long concerned about plaintiff's conduct, disa-

---

**9.** See *Hagelthorn,* 710 F.2d at 82; *Parcinski v. Outlet Co.,* 673 F.2d 34, 36 (2d Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 925, 74 L.Ed.2d 950 (1983).

**10.** See note 5 *supra.*

**11.** See note 4 *supra.*

**12.** Evidence was also presented that plaintiff sought to have a female employee engage in oral sex and was refused, after which he continued to harass her. However, since this charge is largely based on the employee's uncorroborated testimony and was categorically denied by plaintiff, the Court has not considered it on this application.

greed with the evaluation and did not sign it; further, there was testimony that Albert was partial to plaintiff and had an attitude of indifference to complaints about plaintiff's abusiveness toward employees.

The evidence submitted by defendant to support its claim of good cause for plaintiff's discharge was substantial and in large measure uncontradicted. No apparent reason for its rejection exists. Much less is there any basis in the record for the jury's determination of willful conduct and consequent imposition of additional, or liquidated, damages. The employees who testified about Lombardo's abusive conduct were subjected to minimal cross-examination and, in any event, their testimony was neither impaired nor contradicted other than by plaintiff's general denial. There is nothing in the record to support a rejection of their testimony. There is nothing to support any claim that the witnesses had any hostility, bias, or grudge against plaintiff so as to impair their credibility. In sum, based upon my observation of these witnesses, my contemporaneous trial notes, and a post-trial word-by-word reading and study of the trial record, I am persuaded that the jury "reached a seriously erroneous result." Accordingly, the defendant's motion for a new trial is granted.

So ordered.