**Lee R. SEWELL, Plaintiff,**

v.

**The NEW YORK CITY TRANSIT AUTHORITY, Transit Property Protection Department, Transit Labor Relations Department, Transit Equal Employment Opportunity Affirmative Action Department, and John Does, in their official and individual capacities, Defendants.**

**Lee R. SEWELL, Plaintiff,**

v.

**The NEW YORK CITY TRANSIT AUTHORITY, Defendant.**

Nos. CV–90–3734, CV–91–1274.

United States District Court, E.D. New York.

Dec. 30, 1992.

210

Lee Sewell, pro se.

Albert C. Cosenza (Joyce Rachel Ellman, of counsel), Brooklyn, NY, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

In the above-captioned actions, the pro se plaintiff, Lee Sewell, alleges that the defendants discriminated against him in the workplace. Plaintiff brought the first action under 42 U.S.C. § 1983 and the second action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff now moves for summary judgment in both actions and defendants cross-move for summary judgment in both actions. For the following reasons, plaintiff's motion is denied and defendants' motion is granted in both actions.

### FACTS

The parties do not dispute any of the material facts underlying these actions. Plaintiff began working for the New York City Transit Authority ("NYCTA") on December 29, 1986 as a Transit Property Protection Agent. His duties were to control entrance and egress from NYCTA property and to patrol NYCTA property to protect it from fire, theft, vandalism, etc. After plaintiff was continually disciplined for his absenteeism and refusal to comply with NYCTA rules and policies, on August 21, 1990, a NYCTA hearing officer recommended that he be terminated. Plaintiff went before the Tripartite Arbitration Board (the "TAB") of the NYCTA to challenge the hearing officer's decision. On October 1, 1990, the TAB affirmed that recommendation. TAB Opinion and Award ("TAB Op.") (Exh. G to Defs' 3(g) Statement). In its opinion, the TAB noted that plaintiff (1) failed to report to work on February 17, 1990; (2) failed to appear at work and refused to disclose his whereabouts on March 12–13, 1990; and (3) refused to report to an assigned job on April 24, 1990. TAB Op. at 2. Plaintiff did not dispute any of those charges before the TAB; he simply attempted to explain his conduct. *Id.* at 2–3. Because the TAB found "the explanations offered by [plaintiff] in the instant matter [ ] lacking in both verification and credibility," it affirmed the hearing officer's recommendation that plaintiff be terminated. *Id.* at 3–4. Thereafter, plaintiff was terminated by the NYCTA on October 8, 1990,[1] and the TAB opinion was subsequently confirmed in a state court proceeding under Article 75 of the N.Y.Civ.Prac.L. & R. ("Article 75 proceeding"). Order of New York State Supreme Court, Kings County (Jackson, J.), filed February 6, 1992 (Exh. I to Defs' 3(g) Statement).

### *Sewell I*

On October 30, 1990, plaintiff commenced an action under 42 U.S.C. § 1983, against the NYCTA, the Transit Property Protection Department, the Transit Labor Relations Department, and the Transit Equal Employment Opportunity Affirmative Action Department (collectively, the "NYCTA defendants"); the City of New York;[2] and various unnamed defendants in their official and individual capacities[3]

1. Plaintiff incorrectly alleges in the complaint that he was terminated on October 8, 1989. Complaint at 2. As the TAB opinion clearly indicates, plaintiff was employed by the NYCTA as late as April 24, 1990. *See* TAB Op. at 2. The correct date of plaintiff's termination is October 8, 1990. *See* Plaintiff's Complaint filed with the Equal Employment Opportunity Commission, dated October 19, 1990 (Exh.L. to Defs' 3(g) Statement) ("Most recently, on *October 8, 1990,* I was terminated.") (emphasis supplied).

2. The City of New York moved to dismiss the complaint for failure to state a claim upon which relief could be granted because the complaint did not allege that it was involved in plaintiff's termination. By order dated February 25, 1991, this Court dismissed Sewell I as against the City of New York.

3. The complaint names "John Does" as defendants in their official and individual capacities. Evidently, plaintiff intended to sue the NYCTA employees who fired him. *See* Interrogatory # 1 of Plaintiff's Interrogatories, filed December 4, 1990 ("Identify each person ... who took part in the decision to fire the plaintif [sic] ...").

While counsel for the NYCTA defendants meant to include the unnamed individual defendants in its cross-motion for summary judgment, *see* Defs' 3(g) Statement at ¶ 1 (collectively referring to all captioned defendants as "NYCTA"); *id.* at ¶ 2 ("Plaintiff commenced his first action against NYCTA ..."), it failed to include any specific defense on behalf of the unnamed individual defendants. However, as it appears that this Court lacks personal jurisdiction over those defendants because plaintiff has failed to name or to serve any NYCTA employee

("Sewell I"). Plaintiff alleged that the defendants discriminated against him while he was a NYCTA employee and when they fired him. However, since plaintiff failed to allege that his rights were violated pursuant to an official "policy or custom" of the NYCTA defendants, this Court granted plaintiff leave to file an amended complaint setting forth which impermissible policy or custom, if any, led to the claimed deprivation of his constitutional rights. Memorandum and Order, dated February 10, 1992, at 6–7 ("Mem. & Order").

Thereafter, on February 24, 1992, plaintiff filed an amendment to the complaint alleging that:

> during the plaintiff's tenure with the N.Y.C.T.A., the defendants repeatedly adhered to the impermissible custom of negating written specified regulations, policy and/or contractual agreements; ... [T]he continuous negation of these specific rules, regulations, policy, agreements, inevitably led to the [ ] deprivation of [plaintiff's] federal rights; and eventually the plaintiff's employment with the N.Y.C.T.A.

Amended Complaint at 2, ¶¶ I–II.[4] Plaintiff annexed to the Amended Complaint a copy of the NYCTA Regulations, Part I, Rules 1–3 (Exh. A); certain provisions of the Contractual agreement between the NYCTA and the Transit Workers Union (Exh. A); and various provisions of NYCTA Executive Order 82–1 (Exh. B).

*Sewell II*

On April 10, 1991, plaintiff brought a second action solely against the NYCTA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Sewell II"). He alleged that the NYCTA fired him in retaliation for "[his] repeated attempts to seek redress, internally and externally of discriminatory disciplinary acts." Complaint at 2. On October 19, 1990, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging retaliatory termination.[5] He then commenced Sewell II within 90 days of receipt of a "right-to-sue" letter from the EEOC. In an earlier decision, this Court upheld plaintiff's retaliatory discharge claim. Mem. & Order at 7–8.

Each of the parties now moves for summary judgment in Sewell I and Sewell II, arguing that there are no genuine issues of material fact to preclude summary judgment in its favor. For the following reasons, plaintiff's summary judgment motion in Sewell I and Sewell II is denied; the NYCTA defendants' cross-motion for summary judgment in Sewell I is granted; and defendant NYCTA's cross-motion for summary judgment in Sewell II is granted.

## DISCUSSION

### Preclusive Effect of Article 75 Proceeding

As a preliminary matter, defendants argue that plaintiff may not relitigate the facts and issues surrounding his termination of employment in an action under Title VII or § 1983 once a state court has confirmed the TAB decision in an Article 75 proceeding. Defendants invoke the doctrines of res judicata and collateral estoppel in support of their argument. The doctrine of res judicata or claim preclusion estops a party from relitigating a claim or cause of action decided in an earlier action

---

despite the opportunity to discover that information, this action is hereby dismissed as against the unidentified individual defendants.

**4.** The addendum to the complaint is labelled "Complaint/Amendment CV–90–3734, CV–91–1274." Instead of redrafting the original complaint, the pro se plaintiff supplemented the complaint by attempting to allege an impermissible "policy or custom" under *Monell* in accordance with this Court's earlier Memorandum and Order. For the sake of convenience, this Court will read the addendum and the original complaint together, and refer to the addendum as the "Amended Complaint."

**5.** This was plaintiff's second complaint filed with the EEOC. In his first EEOC complaint, filed on November 9, 1989, plaintiff alleged that defendant NYCTA discriminated against him on the basis of his race and sex and retaliated against him because he opposed its discriminatory practices. EEOC Complaint, dated November 9, 1989 (Exh. J. to Defs' 3(g) Statement). On June 4, 1990, the EEOC determined that those charges were meritless. (Exh. B to Exh. L to Defs' 3(g) Statement). Plaintiff then abandoned that claim by failing to sue within 90 days of receipt of his first "right-to-sue" letter.

or which the party could have raised, but was not actually litigated, in the earlier proceeding, *Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 306–07, 165 N.E. 456, 457 (1929) (Cardozo, J.), because "once a judgment has been rendered by a court of competent jurisdiction, it will be treated thereafter as the full measure of relief between the same parties on the same cause of action." *Bottini v. Sadore Management Corp.*, 764 F.2d 116, 119 (2d Cir.1985) (citing *Reilly v. Reid*, 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 648, 379 N.E.2d 172, 175 (1978)).

■ In contrast, the doctrine of collateral estoppel or issue preclusion:

bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992) (citing cases); *S.T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300, 304, 344 N.Y.S.2d 938, 941, 298 N.E.2d 105, 107 (1973) (quoting *Schwartz v. Public Adm'r of Bronx County*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 730 (1969)). While defendants must concede that the TAB opinion standing alone does not prevent plaintiff from seeking judicial redress under Title VII or § 1983, *see, e.g., McDonald v. City of West Branch*, 466 U.S. 284, 292, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984) (prior adverse arbitration determination does not have res judicata or collateral estoppel effect in § 1983 action); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 42–43, 49 n. 10, 59–60, 94 S.Ct. 1011, 1016–17, 1020 n. 10, 1025, 39 L.Ed.2d 147 (1974) (adverse arbitration award will not preclude subsequent Title VII action), they seek to invoke those doctrines of preclusion with respect to the Article 75 proceeding confirming the TAB opinion.

■ This argument must be rejected for several reasons. Notwithstanding that a federal court must accord the same preclusive effect to a state court judgment as that judgment would receive under state law in a subsequent proceeding, *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984), a judgment confirming an arbitration award is an exception to that rule. Under New York law, an arbitration award is only enforceable if it is confirmed by a court in an Article 75 proceeding and filed with the court in accordance with N.Y.Civ. Prac.L. & R. §§ 7510, 7514 (McKinney 1980). *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 385 (2d Cir.1989) (citing *Flora Fashions Inc. v. Commerce Realty Corp.*, 80 N.Y.S.2d 384, 386 (Bronx Co.1948)). "[I]t is the *judgment* entered on an arbitration award that is given preclusive effect in subsequent litigation." *Leddy*, 875 F.2d at 385 (emphasis in original) (citing *Springs Cotton Mills v. Buster Boy Suit Co.*, 275 A.D. 196, 199, 88 N.Y.S.2d 295, 298 (1st Dep't 1949), *aff'd*, 300 N.Y. 586, 89 N.E.2d 877 (1949)); *Allcity Ins. Co. v. Vitucci*, 151 A.D.2d 430, 431, 543 N.Y.S.2d 86, 87 (1st Dep't), *aff'd*, 74 N.Y.2d 879, 547 N.Y.S.2d 841, 547 N.E.2d 96 (1989); *but see Matter of Ranni's Claim*, 58 N.Y.2d 715, 458 N.Y.S.2d 910, 444 N.E.2d 1328 (1982) (applying collateral estoppel to bar relitigation of issues raised in arbitration proceeding in subsequent administrative proceeding without discussing whether the award was ever confirmed or judgment ever entered). However, as this Court recently held in another context, the requirement that final judgment be entered is more functional than formal—allowing courts to distinguish between interlocutory orders and final judgments on the merits—and is not required for the preclusive effect of collateral estoppel and res judicata. *Feldstein v. New York City Dep't of Consumer Affairs*, 804 F.Supp. 471, 474–76 (E.D.N.Y. 1992). Here, defendants do not state whether final judgment was entered in the Article 75 proceeding. They do, however, attach an order of the state court (Jackson, J.) confirming the TAB determination which indicates that it was presented for settlement on January 6, 1992 and was filed on February 6, 1992. Consequently,

the settlement of that order and its filing with the court satisfies the prerequisites for preclusive effect under state law regardless of whether final judgment was entered or not.

■ However, plaintiff is still not barred from pursuing his Title VII and § 1983 claims by the Article 75 proceeding. The Court has consistently distinguished between the arbitrator's function in deciding whether an employer violated an employee's contractual rights under a collective bargaining agreement and the court's function in adjudicating Title VII and § 1983 claims. *Gardner–Denver*, 415 U.S. at 49–50, 94 S.Ct. at 1020–21; *Branch*, 466 U.S. at 290, 104 S.Ct. at 1803. In *Gardner–Denver*, the Court refused to require a union member to choose between commencing an action under Title VII or pursuing a discrimination claim in arbitration. 415 U.S. at 48–49, 59–60, 94 S.Ct. at 1019–20, 1025. The Court stated:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

*Id.* at 50–51, 94 S.Ct. at 1020–21.

This statutory and contractual rights dichotomy denies preclusive effect to Article 75 proceedings confirming arbitral awards. In *Bottini v. Sadore Management Corp.*, 764 F.2d 116 (2d Cir.1985), a building superintendent, who attended weekly religious meetings during his Sunday morning work period, received a notice of termination from his employer in 1983 based on his unsatisfactory work performance. *Id.* at 118. When the plaintiff challenged his ter-

mination in arbitration as provided for in his union contract, the arbitrator found just cause for his termination.[6] *Id.* Plaintiff then commenced an Article 75 proceeding to challenge the adverse arbitral award; the state court denied his petition. *Id.* at 118–19. While the arbitration proceeding was pending, the plaintiff, complying with the statutory prerequisites of Title VII, filed religious discrimination claims with the EEOC and the New York State Division of Human Rights ("SDHR"). *Id.* at 119. After both administrative agencies found no probable cause for his religious discrimination claim, the plaintiff commenced a Title VII action in federal court. *Id.*

The district court held that the earlier proceedings barred plaintiff from bringing the Title VII action and dismissed the action. In reversing the district court, the court held that both the arbitration proceeding and the subsequent Article 75 proceeding were not entitled to preclusive effect because they did not afford the plaintiff a "full and fair opportunity" to raise his discrimination claims. *Id.* at 120–21. The court held that the arbitration award itself could not bar a subsequent Title VII action under *Gardner–Denver, supra*, especially where the award did not indicate that the arbitrator considered or received evidence on the discrimination claim. *Id.* Likewise, the judicial confirmation of the award could not bar the Title VII action. As the court stated:

> [S]ince the Title VII claim was outside the scope of the arbitration proceeding, it was *a fortiori* beyond the scope of the Article 75 proceeding brought to enforce the arbitrator's award. Thus, the prior state-court proceeding and the present federal-court proceeding do not involve the same causes of action. Second, inasmuch as the New York court's review in the Article 75 proceeding was narrowly limited, it lacked the power to entertain the discrimination claim that [the plaintiff] now asserts. Therefore, we conclude that the prior Article 75 proceeding

---

**6.** Plaintiff received an earlier notice of termination in 1982. He successfully challenged that notice in arbitration. The first arbitrator found

no cause for his discharge and attempted to devise a work schedule that would allow plaintiff to attend the Sunday morning meetings.

in state court does not preclude plaintiff from pursuing his federal claim. *Id.* at 121.

The TAB decision and the Article 75 proceeding in this case suffer from the same infirmities as did their counterparts in *Bottini.* First, the TAB decision is generally not entitled to preclusive effect under *Gardner–Denver.* Furthermore, the TAB decision does not preclude plaintiff's subsequent Title VII and § 1983 actions because, like the plaintiff in *Bottini,* he never raised his discrimination claims before the TAB, nor does the arbitration award mention such claims. *See* TAB Op. at 2–4 (rejecting plaintiff's explanations of three instances of absenteeism and insubordination, but not mentioning any claims of discrimination).

■ Nor does the Article 75 proceeding implicate the doctrines of res judicata or collateral estoppel with respect to plaintiff's Title VII and § 1983 claims. Since the TAB could only enforce plaintiff's contractual rights under the Collective Bargaining Agreement ("CBA") between the NYCTA and the Transit Workers Union and not plaintiff's statutory rights under Title VII or § 1983, *Gardner–Denver,* 415 U.S. at 53–54, 94 S.Ct. at 1022–23 (Title VII); *Branch,* 466 U.S. at 290–91, 104 S.Ct. at 1803–04 (§ 1983), the state court confirmation of that award did not address, nor could it address, plaintiff's discrimination claims. Thus, res judicata does not bar the Title VII and § 1983 claims as they were not, nor could they have been, raised in the Article 75 proceeding. Likewise, the limited scope of judicial review of the arbitral awards under New York law prevents this Court from applying collateral estoppel to the Article 75 proceeding. *Bottini,* 764

F.2d at 121. Accordingly, the Article 75 proceeding is not entitled to preclusive effect in either of plaintiff's actions in federal court. *See also Lum v. City and County of Honolulu,* 690 F.Supp. 914, 915–16 (D.Haw.1988) (noting in dicta that judicial confirmation of arbitrator's decision cannot be accorded any greater preclusive effect than the underlying arbitral award).[7]

■ Furthermore, precluding plaintiff from bringing suit under Title VII and § 1983 based on the judicial confirmation of the TAB decision would frustrate the salutary purposes of those statutes. Plaintiff was not a party to the state court proceeding; his union, the Transit Workers Union ("TWU"), represented him at that proceeding. When the TWU failed to oppose the NYCTA's application for confirmation of the arbitration award, the state court was required to confirm the award under New York law. *See* N.Y.Civ.Prac.L. & R. §§ 7510, 7511 (McKinney 1980) (state court "shall" confirm an arbitral award once a party applies for such an order within one year of receipt of the award, *unless* another party moves to vacate the award under the limited grounds specified in the statute); *see also Vilceus v. North River Ins. Co.,* 150 A.D.2d 769, 770, 542 N.Y.S.2d 26, 27 (2d Dep't 1989) (challenges to arbitration awards are limited to grounds specifically enumerated in statute); *Bottini,* 764 F.2d at 121 (demonstrating narrow scope of judicial review of arbitral awards under New York law).

■ In rejecting the preclusive effect of arbitration awards in the collective-bargaining context, the Court has long recognized that union representation before an arbitrator may conflict with the interests of an individual plaintiff. *Branch,* 466

**7.** While some courts do apply the doctrines of res judicata and collateral estoppel to judicial confirmations of arbitral awards, they are limited to situations where the state court actually reviewed the arbitrator's decision. *See, e.g., Rider v. Pennsylvania,* 850 F.2d 982, 986–87, 995 (3d Cir.1988) (according preclusive effect where state court decided discrimination issue on the merits in vacating arbitrator's decision), *cert. denied,* 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988); *Genova v. Town of Southampton,* 776 F.2d 1560, 1561 (2d Cir.1985) (upholding

preclusive effect of state court confirmation of arbitrator's decision where plaintiff actually litigated the award's validity in state court). *See also N.L.R.B. v. Yellow Freight Systems,* 930 F.2d 316, 319 n. 2 (3d Cir.1991) (similarly explaining *Rider* holding), *cert. denied,* — U.S. ——, 112 S.Ct. 78, 116 L.Ed.2d 51 (1991). In contrast, the state court in this case did not review the merits of the TAB decision, but merely confirmed it based on the lack of opposition by plaintiff's union.

U.S. at 291, 104 S.Ct. at 1803 (§ 1983); *Gardner–Denver*, 415 U.S. at 58 n. 19, 94 S.Ct. at 1024 n. 19 (Title VII); *see also Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, 111 S.Ct. 1647, 1657, 114 L.Ed.2d 26 (1991) (distinguishing collective-bargaining context on ground that union representation creates tension with employee's individual rights) (citing *Gardner–Denver*).[8] Similarly, where, as here, plaintiff was not a party to the Article 75 proceeding, and the TWU chose not to oppose the confirmation of the TAB decision, plaintiff should not be deprived of his day in court to litigate his statutory claims.[9] For all these reasons, neither the TAB decision, nor the Article 75 proceeding, is entitled to preclusive effect in these proceedings, and this Court will proceed to determine whether summary judgment is appropriate in Sewell I and Sewell II.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but, viewing the evidence in the light most favorable to the adverse party, need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co., Inc. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the non-movant such that a jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This standard also applies to cross-motions for summary judgment in that "each movant has the burden of presenting evidence to support its motion that would allow the [ ] court, if appropriate, to direct a verdict in its favor." *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir.1988) (citing *Eastman*, 841 F.2d at 473–74). However, "there can be 'no genuine issue as to any material fact'" if the plaintiff exhibits "a complete failure of proof concerning an essential element of [his] case...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Likewise, while a cross-movant may defeat the summary judgment motion of another cross-movant by adequately demonstrating the existence of a genuine issue of material fact, a complete failure of proof by one will compel the entry of summary judgment for the other. In this case, since the parties do not dispute any of the underlying facts,[10]

---

**8.** In *Gilmer,* the Court held that an employee, subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* prospectively waived his right to bring an age discrimination suit under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.,* by agreeing to arbitrate employment related claims. —— U.S. at ——, ——, 111 S.Ct. at 1651–52, 1657. However, *Gilmer* does not apply to this case since defendants do not contend that plaintiff prospectively waived his right to bring a Title VII or § 1983 action based on the CBA. Moreover, *Gilmer* itself expressly distinguished between the *Gardner–Denver* line of cases in the collective-bargaining context and cases controlled by the FAA. —— U.S. at ——, 111 S.Ct. at 1657. Accordingly, plaintiff has not prospectively waived his statutory rights under the CBA.

**9.** At oral argument, plaintiff argued that he cannot be bound by the TAB's decision because he was not a party to the TAB proceeding nor the Article 75 proceeding. However, an employee is bound by his union's representation in an arbitral or judicial proceeding. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571, 96

S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976) (where employee represented by union, an erroneous arbitration award must stand unless "the employee's representation by the union had been dishonest, in bad faith or discriminatory."); *Handley v. Phillips,* 715 F.Supp. 657, 667 & n. 6 (M.D.Pa.1989) (employee bound by union representation before arbitral and judicial forum) (citing *Hines* ). Thus, since plaintiff cannot demonstrate union impropriety, he is barred from relitigating his *contractual claims* under the CBA based on the adverse TAB decision and the Article 75 proceeding.

**10.** In addition, plaintiff's failure to submit a Local Rule 3(g) counterstatement setting forth "the material facts as to which [he] ... contend[s] that there exists a genuine issue to be tried" may be yet another reason to deem the facts contained in Defs' 3(g) Statement as admitted. However, since plaintiff appears pro se, this Court will excuse that oversight. *Roach v. City of New York,* 782 F.Supp. 261, 266 (S.D.N.Y. 1992) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652

**217**

this Court must determine whether either cross-movant is entitled to judgment as a matter of law.

*Sewell I*

 Summary judgment is appropriate in this § 1983 action because plaintiff cannot show that an impermissible municipal custom or policy led to the derogation of his constitutional rights as required by *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). According to *Monell*, a municipality is not subject to liability under § 1983 on a respondeat superior theory; thus, a municipality will only be liable for the actions of its employees or agents when they act "pursuant to [an] official municipal policy of some nature...." *Id.* at 691, 694, 98 S.Ct. at 2036, 2037. The Court subsequently established that a municipal policy could only be established by a "final policymaking authority," which is to be determined based on state law. *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986) (plurality opinion)). In refining *Pembaur*, the *Praprotnik* Court held that the finality aspect of a policy meant that "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those [municipal] policies, rather than the subordinate's departures from them, are the act of the municipality." *Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926.

Based on the foregoing legal standards, it is clear that defendants are entitled to summary judgment as a matter of law. Plaintiff cannot demonstrate that the TAB followed an impermissible municipal custom or policy at the arbitration proceeding leading to the alleged constitutional tort. First, in ruling on defendants' motion to dismiss, this Court "instructed [plaintiff] to refile his complaint ... and to allege precisely what 'policy or custom' of the NYCTA caused him to be deprived of his federal rights under Section 1983." Mem. & Order at 6–7. Pursuant to that instruction, plain-

tiff filed an amendment to the complaint. However, that amendment fails to state an identifiable "policy or custom" that would subject the NYCTA defendants to liability under § 1983. Plaintiff simply alleges that "the defendants repeatedly adhered to the impermissible custom of negating written specified regulations, policy and/or contractual agreements; ... inevitably le[ad-ing] to the [ ] deprivation of [plaintiff's] federal rights. Amended Complaint at 2, ¶¶ I–II.

This allegation, however, does not yield liability against the NYCTA defendants under § 1983 because the TAB does not possess "final policymaking authority." The TAB is required to follow NYCTA regulations. Its authority derives from a Collective Bargaining Agreement ("CBA") between the NYCTA and the TWU, plaintiff's union. According to the CBA:

> The [TAB], in rendering any opinion or determination shall be strictly limited to the interpretation and application of the provisions of this [CBA] or of any written rule or Policy/Instruction of the [NYCTA] governing or affecting hourly paid employees and *it shall be without any power or authority to add to, delete from or modify any of the provisions of this [CBA], or of such rules, or Policy/Instructions.*

Defs' Memo. of Law at 5 (citing CBA, Article II, § 2.1(C)(d)) (emphasis added). Thus, the TAB is not a final policymaking authority of the NYCTA for *Monell* purposes.

In fact, all the rules and regulations annexed to plaintiff's Amended Complaint indicate that the policy of the NYCTA defendants *is to prevent* discrimination against employees and to protect employee rights—not to promote disregard of the NYCTA's formal, official policies. Thus, as there are no triable issues of fact, the NYCTA defendants are entitled to summary judgment on the § 1983 claim.

*Sewell II*

 Plaintiff and defendant NYCTA cross-move for summary judgment on the

(1972) (pleadings of pro se litigant held to "less stringent" standard than pleadings of attorney)).

Title VII retaliatory discharge claim. Summary judgment is appropriate in a discrimination case if the familiar Rule 56 standard is met. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). As stated above, if the plaintiff exhibits "a complete failure of proof concerning an essential element of [his] case ...," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), summary judgment must be entered for the defendant. In a Title VII action, "[t]he ultimate burden of persuading the trier of fact that the defendant[s] intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Thus, summary judgment must be entered for defendant NYCTA if this Court determines that plaintiff completely fails to carry his burden on the retaliatory discharge claim.

The trifurcated analysis for Title VII cases is well established. As the Supreme Court stated in *Burdine:*

> First, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff [makes this showing], the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

450 U.S. at 252–53, 101 S.Ct. at 1093–94 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668 (1973)).

In this case, it is unnecessary to determine whether plaintiff has made a *prima facie* showing of retaliatory discharge, *see, e.g., DeCintio v. Westchester County Medical Ctr.,* 821 F.2d 111, 115 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Thermidor v. Beth Israel Medical Ctr.,* 683 F.Supp. 403, 410–11 (S.D.N.Y.1988),[11] because, even assuming that he has made the requisite showing, it is clear that defendant NYCTA has articulated a "legitimate, nondiscriminatory reason" for plaintiff's termination—i.e., his insubordination and chronic absenteeism. In turn, plaintiff has failed to demonstrate that the stated reason is pretextual "either *directly* by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly* by showing that the employer's proffered explanation is unworthy of credence." *Long v. A.T. & T. Info. Sys., Inc.,* 733 F.Supp. 188, 200 (S.D.N.Y.1990) (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095) (emphasis added). Under these circumstances, summary judgment in favor of the NYCTA is warranted. *See, e.g., Smith v. American Express Co.,* 853 F.2d 151, 154–55 (2d Cir.1988) (while summary judgment is ordinarily inappropriate where plaintiff makes a *prima facie* showing of discrimination, it is appropriate where plaintiff cannot sustain his burden of demonstrating that the employer's proffered explanation is pretextual); *but cf. Maresco v. Evans Chemetics,* 964 F.2d 106, 114 (2d Cir.1992) (reversing summary judgment for employer where facts supporting plaintiff's *prima facie* case of age discrimination would also support his claim that employer's proffered non-discriminatory reason was pretextual).

This Court has already noted that:

> It is quite clear to this [C]ourt that the plaintiff claims that the defendant terminated his employment as retaliation for the plaintiff's efforts to "seek redress"

---

**11.** The *Thermidor* court paraphrased the elements of a *prima facie* case of retaliation under Title VII, as enacted in 42 U.S.C. § 2000e-3(a) as follows:

> [A] plaintiff must demonstrate: (i) that he engaged in protected activity under Title VII (i.e., filed a complaint with the ... EEOC), (ii) that defendant, the alleged retaliator, knew of plaintiff's action, (iii) that defendant's employment decision disadvantaged plaintiff, and (iv) that a causal connection exists between the protected activity and the disadvantageous employment action.

*Id.* at 411 (citing *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980)).

for the defendant's alleged "discriminatory disciplinary acts." Undoubtedly, the plaintiff refers here to the complaint he filed with the EEOC prior to his termination. That is, the plaintiff alleges— quite cogently, to the mind of this court—that the defendant fired him because he had complained to the EEOC about ... what the plaintiff concluded was discriminatory conduct by the defendant against him. Termination by reason of such retaliation is actionable under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–3(a).

Mem. & Order at 7–8.

■ The augmented record before this Court now reveals that plaintiff was fired because of a pattern of absenteeism and flagrant disregard for NYCTA rules. *See* TAB Op. at 4 [12]; Determination of EEOC, Charge Number 160–90–0213 ("EEOC Complaint I"), dated June 4, 1990 (Exh. K to Defs' 3(g) Statement) (noting that plaintiff had disciplinary problems as far back as 1987 and that he was removed from his position in 1989 for thrice violating NYCTA policies in a thirty day period); Letter of Joyce Rachel Ellman to EEOC in response to EEOC Complaint I, dated Feb. 9, 1990 and exhibits thereto (Exh. J to Defs' 3(g) Statement) (outlining disciplinary measures taken against plaintiff in 1987, 1988 and 1989 for insubordination and chronic lateness and absenteeism before he filed his first EEOC complaint). In the absence of a showing of pretext, an employer's summary judgment motion on a Title VII claim may be granted where an employee is dismissed based on the employee's unsatisfactory work record. *See, e.g., Thermidor,* 683 F.Supp. at 412–14 (granting summary judgment for defendant employer because "plaintiff in the instant case has failed to demonstrate that defendants' well-documented claim of unsatisfactory job performance was mere pretext for discriminatory termination.").

■ Furthermore, plaintiff's conclusory allegations of discrimination are insufficient to withstand the defendant NYCTA's cross-motion for summary judgment under Fed.R.Civ.P. 56(e). *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *see also Smith v. American Express Co.,* 853 F.2d 151, 154–55 (2d Cir.1988). Rule 56(e) mandates that an adverse party not rest on the pleadings, but must respond to a properly supported summary judgment motion with affidavits that set forth specific facts showing that there is a genuine issue for trial.

Plaintiff initially moved for summary judgment without supporting affidavits. At that time, he submitted a memorandum of law which does not set forth any facts in dispute, but only contests the TAB decision. To date, plaintiff has still not submitted any affidavits to challenge the NYCTA's cross-motion for summary judgment despite being granted the opportunity to do so. *See* Order of this Court, dated August 20, 1992 (incorporating plaintiff's representation to Magistrate Judge Caden that he does not wish to respond to the cross-motions for summary judgment). Therefore, based on the augmented record, this Court concludes that there are no genuine issues of triable fact to preclude summary judgment for defendant NYCTA. Plaintiff has simply not shown that the NYCTA acted under pretext when it discharged him based on his poor work record. Similarly, plaintiff has failed to offer any factual support for his conclusory assertion that anyone at the NYCTA discriminated against him in the grievance process by upholding the recommendation that he be terminated. Thus, while plaintiff claims that he was wrongfully discharged in violation of Title VII, his moving papers fail to present any facts to satisfy his burden of proof at trial on that claim. Accordingly,

---

**12.** While an arbitral award is not entitled to preclusive effect in a subsequent Title VII or § 1983 proceeding, a court may defer to the arbitrator's findings of fact. *Gardner–Denver,* 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21; *Branch,* 466 U.S. at 292 n. 13, 104 S.Ct. at 1804

n. 13. Accordingly, this Court relies on the TAB's findings that plaintiff committed the three charged acts of insubordination and that his explanations for his misconduct were incredible. TAB Op. at 2, 4.

defendant NYCTA is entitled to summary judgment "as a matter of law" in Sewell II.

## CONCLUSION

For the foregoing reasons, plaintiff's summary judgment motion is denied in Sewell I and Sewell II; the NYCTA defendants' cross-motion for summary judgment is granted in Sewell I; Sewell I is dismissed as against the unnamed individual defendants; and the NYCTA's cross-motion for summary judgment is granted in Sewell II.

SO ORDERED.