S. Anderson EDWARDS, Plaintiff,

v.

INTERBORO INSTITUTE, Defendant.

No. CV–92–4566.

United States District Court, E.D. New York.

Jan. 7, 1994.

---

plaint with the Equal Employment Opportunity Commission ("EEOC"). Edwards' former employer, Interboro Institute, Inc. ("Interboro"), now moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment on Edwards' complaint. For the following reasons, the motion is granted.

## FACTS

Edwards was employed as an instructor of paralegal studies at Interboro from September 18, 1990 to February 7, 1992. Def.'s 3(g) Statement, ¶¶ (a)(p). Plaintiff alleges, however, that he was actually fired twice; once on December 20, 1991, because of his race and the courses which he chose to teach, and again in February of 1992 in retaliation for filing a Charge of Discrimination with the EEOC on or about January 2, 1992 (the "Charge of Discrimination"). Affidavit of S. Anderson Edwards, October 8, 1993 ("Edwards Aff'd"), at 3–8. It is Interboro's position that plaintiff was not fired in December of 1991 and that he was terminated in February of 1992 for cause.

### A. *The December 20, 1991 Meeting*

#### 1. *Interboro's Version of the Meeting*

As stated above, there is a dispute as to whether Edwards was terminated on December 20, 1991.[1] At this time Edwards attended a meeting with Bruce R. Kalisch ("Kalisch"), the President of Interboro; William E. Mahoney ("Mahoney"), Interboro's Academic Dean; and David M. Levy ("Levy"), attorney for Interboro. According to Kalisch, this meeting was called to address certain complaints which the school had received from some of Edwards' female students regarding sexual harassment. Kalisch Aff'd, ¶ 7.[2] Kalisch explained the school's administrative procedures for dealing with such com-

Michael M. Premisler, Carle Place, NY, for plaintiff.

David M. Levy, Kraver & Levy, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, Senior District Judge:

This action is brought by plaintiff S. Anderson Edwards ("Edwards") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Edwards alleges that he was terminated once because of his race and the courses which he chose to teach, and a second time in retaliation for filing a com-

---

1. Edwards originally disputed the dates submitted by defendant. In his first Charge of Discrimination, Edwards stated that he was terminated on December 22, 1991, which was a Sunday. Affidavit of Bruce R. Kalisch, dated August 19, 1993 ("Kalisch Aff."), Ex. B ("On December 22, 1991, I was advised by the Dean that I would not be teaching for the Spring 1992.") In a letter to Edwards from Levy, dated January 13, 1992, Levy states that Dean Mahoney was at home on that Sunday and did not speak with Edwards that day. Levy Aff., Ex. D. However, in his affidavit in opposition to defendant's motion, plaintiff states that this meeting did in fact occur on December 20, 1991, and that this was the date of his first alleged termination. Edwards Aff'd, at 3, 6.

2. No written complaints were ever filed by these students. Answer, ¶ 15 (Levy Aff'd, Ex. B).

plaints, *id.*, and listened to Edwards' "vehement[ ]" denial of those charges, *id.*, ¶ 8. Kalisch also asked Edwards to supply the school with an official copy of his academic transcript because the College of Career Association had cited and criticized Interboro for not having official academic transcripts on file for several of its instructors. *Id.*, ¶ 9. Kalisch claims that Edwards' employment was not terminated on December 20, 1991, *id.*, ¶ 10; that his name remained on the roster of active instructors, *id.*, ¶ 11; and that he was scheduled to teach in the Spring of 1992, *id.*

In his affidavit, Levy also states that during the December 20, 1991 meeting, the persons present discussed the student complaints against Edwards. Levy Aff'd, ¶ 7(d). Levy does not state, as does Kalisch, that Edwards was not fired at this meeting. However, Levy explains that following receipt of Edwards' first Charge of Discrimination to the EEOC, he (Levy) contacted Edwards and informed him that he had not been fired and that he was expected to resume teaching in the spring semester. *Id.*, ¶ 7(i) ("I wrote to Edwards indicating, among other things, that he had not been fired in December 1991 and that Interboro expected him to return to teach the classes for which he was scheduled commencing January 14, 1992[.]"). *See also id.*, Ex. D (letter to Edwards from Levy dated January 13, 1992).

### 2. *Edwards' Version of the Meeting*

In his complaint, dated September 4, 1992 (the "Complaint"), Edwards alleges that he was fired at the December meeting because of his race and the courses he chose to teach:

On December 23, 1991 [sic] Bruce Kalisch, President of Interboro Institute, William Mahoney, Vice–President, of Interboro Institute, and Attorney at Law, David Levy, questioned me about the content of lectures and the subject matter of the final exams I gave at Interboro Institute, the said subject matter discussed was New York State Executive Law Article 15. (Discrimination). All three participants said I was fired as a result of said lectures.

Complaint, ¶ 6(A). *See also id.*, ¶ 5(A) (alleging discriminatory conduct with regard to race). In his affidavit Edwards states that at the meeting "[David Levy] questioned me as to why I taught and discussed race, class and sex discrimination [in my classes.]" Edwards Aff'd at 4. "It is clear they wanted a white man discussing these subjects, someone who would not leave impressions with the students." *Id.* at 6. There was also little doubt in Edwards' mind that he had been fired at this meeting: "It was made very clear to me at the December 20th meeting that I was not welcome at Interboro." *Id.* at 7.[3] In his affidavit, Edwards concludes that "I was discharged because I, as a black male, tried to teach other minority students about discrimination." Edwards Aff'd at 7. Edwards, however, does not allege sexual discrimination in his Complaint.

Defendant Interboro maintains that whether Edwards was fired in December of 1991 is irrelevant because it is undisputed that Edwards returned to work on January 14, 1992. Levy Aff'd, ¶ 7(k). In his second Charge of Discrimination, dated February 11, 1992, Edwards concedes that "[s]ubsequent to the filing of the [first Charge of Discrimination], I was asked to return to my teaching duties by the Respondent's attorneys in a letter dated January 13, 19992 [sic]. I returned to work. . . ." Levy Aff'd, Ex. A.[4]

### B. *The Termination on February 7, 1992*

#### 1. *Interboro's Explanation for Edwards' Termination*

Defendant Interboro submits that Edwards was fired for cause on February 7, 1992. In support of this assertion, Interboro has submitted an affidavit by Ronald Senese, Chairperson of the Paralegal Studies Pro-

**3.** In his first Charge of Discrimination, Edwards stated that he was terminated on December 22, 1991, and that he was told by the Dean that he "should not have taught sexual harassment and racial discrimination in [his] class." Kalisch Aff'd, Ex. B. In this submission, Edwards also alleges that he was terminated because of his race and sex. He stated that "a female counterpart who teaches the same courses as I did received a higher salary raise." *Id.*

**4.** Edwards withdrew his first EEOC filing upon his return to work. Edwards Aff'd at 7.

gram at Interboro, dated August 24, 1993 ("Senese Aff'd"). In this affidavit Senese states that he made three separate and written requests to Edwards to supply him with course outlines and syllabi. Senese Aff'd, ¶¶ 6–8, Exs. A, B, and C. Senese states that he "viewed Edwards' refusal to provide [him] with outlines and syllabi for his courses as an act of insubordination in view of the fact that I had specifically directed him to do so in three previous memorandums [sic]." Id., ¶ 9.

Kalisch also states that Edwards failed to supply him with the official academic transcripts which he (Kalisch) had requested at the December 20, 1991 meeting. Kalisch Aff'd, ¶ 21. It is the defendant's position that Edwards was terminated for his insubordination in failing to supply outlines, syllabi and his academic transcripts.[5] Interboro also states in its Answer that Edwards' employment was terminated because he "failed to use appropriate text." Answer, ¶ 19(b) (Levy Aff'd, Ex. B).

### 2. Edwards' Explanation for his Termination

In the Complaint, Edwards alleges that he was terminated in February of 1992 in retaliation for filing his first Charge of Discrimination on or about January 2, 1992.[6] In response to defendant's assertion that he was terminated for insubordination, he states in his affidavit that he lacked the financial resources to obtain an official transcript and that defendant was aware of this limitation; hence, its request for the transcript was an excuse upon which it could base its discriminatory firing:

The question of my academic credentials and my degree is an interesting and important one. When hired by Interboro, I explained that because of financial prob-

lems, I could not obtain an official transcript. There seemed to be no problem. I was able to provide an unofficial transcript (Exhibit "B"). As a basis for my discharge (the second time), Interboro claimed that I had not provided an official copy of my transcript. *This seems to have been just an excuse.* They knew from the beginning that I couldn't provide that document. They also had other teachers who had not provided this information.

Edwards Aff'd at 6–7 (emphasis added). Regarding defendant's assertion that plaintiff failed to provide the requested-for syllabi, "Ron Senese had all of my course outlines and proper documentation." Id. at 7.

\*    \*    \*

Seven months after his termination Edwards commenced this civil action against Interboro. In its answer, Interboro denied plaintiff's allegations; asserted two affirmative defenses; and asserted a counterclaim for defamation stemming from a letter which Edwards sent to the Bureau of Proprietary Vocational Schools in New York City,[7] and a counterclaim for libel stemming from a letter which Edwards sent to the United States Department of Education.[8] (Interboro also claims that Edwards has not adequately responded to its discovery requests. Levy Aff'd, Ex. C.)

### DISCUSSION

#### I. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing a properly supported summary judgment mo-

---

5. "In February of 1992, I was informed by Dean Mahoney that Edwards' employment with Interboro had been terminated for cause as a result of his failure to comply with the college's regulations requiring the preparation of course outlines and syllabi and his refusal to submit his official academic transcripts." Senese Aff'd, ¶ 10.

6. In his second Charge of Discrimination (Levy Aff'd, Ex. A (attached to Complaint)), Edwards claims that the filing of the Charge of Discrimination also led to a reduction in his responsibilities: "[After] I returned to work ... I was

stripped of my previously held recruiting responsibilities...."

7. In this letter Edwards accused Interboro of, among other things, lying to its students about employment prospects.

8. In this letter Edwards accuses Interboro of, among other things, using Federal funds to pay students for doing personal work for the school's President, Bruce R. Kalisch.

tion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "In assessing the record to determine whether there is a genuine issue of fact, the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

■ In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmoving party, therefore, must come forward with *facts,* and not doubts as to the veracity of the moving party's allegations: "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. One of the purpose's of summary judgment, therefore, "is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24, 106 S.Ct. at 2552–53.

In the context of an employment discrimination action, the Second Circuit has stated that "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).[9] *See also Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986) ("[E]ven when such issues of motive or intent are at stake, summary judgment is proper 'where the plaintiff presents no indications of motive and intent supportive of his position.'").

## II. The Alleged First Termination Based on Race

Edwards alleges in his Complaint that he was terminated in December of 1991 in violation of 42 U.S.C. § 2000e–2, which provides in relevant part as follows:

(a) it shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race....

■ As the Supreme Court observed in *Griggs v. Duke Power Co.,* 401 U.S. 424, 429–30, 91 S.Ct. 849, 852–53, 28 L.Ed.2d 158 (1971), "[t]he objective of Congress in the enactment of Title VII ... was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." The guidelines for analyzing a case for discrimination in employment practices were outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

9. This court has also not hesitated to grant summary judgment in a employment discrimination action where the evidence did not establish that the employer's motivation was improper. *Johnson v. Tower Air, Inc.,* 149 F.R.D. 461, 466 (E.D.N.Y.1993) ("While discrimination claims often require a determination of party's intent— normally not a subject for summary judgment— the Second Circuit has recognized that 'the salutary purposes of summary judgment ... apply no less to discrimination cases than to commercial or other areas of litigation.'") (citing *Meiri,* 759 F.2d at 998).

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. However, even if a trier of fact rejects the defendant's submission that its reasons were justified, the burden of proving that the motivation for the plaintiff's termination was improper remains with the plaintiff. *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ("[T]he Court of Appeals' holding that rejection of the defendant's proffered reasons *compels* judgment for the plaintiff ... ignores our repeated admonition that the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'") (emphasis in original).

### 1. *Edwards' Prima Facie Case.*

■ The elements necessary to satisfy plaintiff's initial burden of establishing a prima facie case of discriminatory discharge are as follows: (1) the plaintiff belongs to a protected class; (2) the employee's job performance was satisfactory; (3) the employee was discharged; and (4) after the discharge "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). The nature of a plaintiff's

burden of proof at the prima facie stage is de minimis. *Meiri,* 759 F.2d at 996 n. 10.

It is undisputed that Edwards is a member of a racial minority (he is black). Edwards has alleged that his job performance was satisfactory. Edwards Aff'd at 2 ("During my first year, the chairman of my department visited my classes on at least one occasion and gave me an outstanding review."); *id.* at 3 (plaintiff is hired by Kalisch as a recruiter). An assertion by plaintiff that his work was satisfactory can be sufficient. *Thermidor v. Beth Israel Medical Ctr.,* 683 F.Supp. 403, 409 (S.D.N.Y.1988). However, Interboro asserts that even if Edwards was fired in December of 1991, Edwards cannot establish a prima facie case of racial discrimination because he returned to work in January of 1992; that is, after the "discharge" the position did not remain open and Interboro did not continue to seek applicants (as evidenced by the fact that Edwards returned to work). Defendant's 3(g) Statement, ¶ 7(k) ("Edwards returned to teach classes at Interboro as scheduled on January 14, 1992[.]"). As pointed out above, Edwards has conceded that he returned to work following the December 1991 meeting: "Subsequent to the filing of the [first Charge of Discrimination], I was asked to return to my teaching duties by the Respondent's attorneys in a letter dated January 13, 19992 [sic]. I returned to work...." Levy Aff'd Ex. A.[10] *See also* Plaintiff's Statement Under Rule 3(g), ¶ (k) ("Plaintiff admits that he returned to teach classes at Interboro as scheduled on January 14, 1992."); Plaintiff's Memorandum of Law at 2 ("Plaintiff ... concluded that he was being rehired for the spring 1991 [sic] semester.").

■ The statute makes unlawful either a refusal to hire or the termination of a plaintiff's employment based on race. 42 U.S.C.

---

10. In his second Charge of Discrimination, Edwards states that he was "stripped of [his] previously held recruiting responsibilities" following his return to work. Levy Aff'd, Ex. A. Edwards' complaint, however, only alleges unlawful termination. *But see Howard v. Holmes,* 656 F.Supp. 1144, 1146 n. 4 (S.D.N.Y.1987) ("[T]his Court may exercise 'jurisdiction ... over all claims encompassed within the EEOC charge and like or related matters which might reasonably be expected to be subject to an EEOC investigation growing out of the charge.'") (quoting *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963, 970 (E.D.Pa.1977)). However, given that plaintiff has not come forward with any evidence upon which a reasonable jury could conclude that the termination was not bona fide, jurisdiction over this subsidiary claim would not affect the outcome.

§ 2000e–2(a)(1). Even if Edwards' allegation is correct that he was fired at the December 1991 meeting, it is uncontroverted that he was working for Interboro in February of 1992. He was therefore either (i) fired *and* re-hired; or (ii) never fired. In either case, the two activities prohibited by the statute (termination and refusal to rehire) are not implicated and hence there is no prima facie case of discrimination. *See Mughal v. Chart House, Inc.*, No. 85 C 5396, 1986 WL 9539 at *10 (E.D.Pa. Aug. 27, 1986) ("Defendant could have rehired plaintiff solely to escape [Title VII] liability."). Moreover, after his discharge the position did not remain open and defendant did not continue to seek applicants, and on this basis as well he cannot establish a prima facie case based on the first termination.[11] Furthermore, a lack of racial animus on the part of defendant is bolstered by the fact that approximately 95% of Interboro's students are minorities, and over 50% of its teaching staff are black, Hispanic and Asian. Transcript of Motion, October 15, 1993, at 2.

### III. *Retaliatory Discharge*

Plaintiff also makes a claim for retaliatory discharge in violation of Section 2000e–3(a) of Title 42 of the United States Code. This statute provides in relevant part that,

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

"The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988).

### A. *The Prima Facie Case*

■ "A plaintiff in a [Title VII] retaliation claim must demonstrate, for the purposes of a *prima facie* case, that: (1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff based upon her activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993). *See also Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 64 (2d Cir.1992) ("[A] plaintiff must show participation in a protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action."). There are two methods of establishing a causal connection: indirectly by "showing that the protected activity was followed by discriminatory treatment ... or directly through evidence of retaliatory animus." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

In this case, it is undisputed that plaintiff has participated in a protected activity—*i.e.*, the filing of his complaint with the EEOC on or about January 2, 1992. "[T]he protected activity usually takes the form of filing a formal complaint with an agency or filing a law suit." *Kotcher*, 957 F.2d at 65. The defendant knew of the filing of the complaint on January 13, 1992, a little less than one month prior to plaintiff's termination. Kalisch Aff'd, ¶ 12 ("On January 13, 1992 ... I received notice from the EEOC [that] Edwards had filed a complaint on or about January 3, 1993 [sic]...."). It is also undisputed that Edwards suffered from an employment action disadvantaging him (he was fired). What is vehemently disputed, however, is the causal connection between plaintiff's filing of charges in January and his

---

**11.** This conclusion moots the arguments presented in the Reply Affidavit of Bruce R. Kalisch, dated October 13, 1993 ("Reply Aff'd"), ¶ 6 ("Edwards *is* unable to state with even the barest of detail the basis upon which he concluded that he was terminated because he was a black man teaching race and sex discrimination to his students."); and *id.*, ¶¶ 9–11, Ex. A (Edwards was *not paid less than other teachers* with less qualifications).

termination in February. Plaintiff alleges that he was terminated in retaliation whereas defendant alleges that he was terminated for insubordination.

### 1. *Establishing a Causal Connection*

■ Pursuant to the standards governing summary judgment in the employment discrimination context, plaintiff cannot simply allege a causal connection; he must point to admissible facts upon which a reasonable jury could reach the conclusion that he was the victim of discrimination. *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 86 (2d Cir.1990) ("Because of the lack of evidence demonstrating a causal nexus between [plaintiff's] age discrimination complaint and any subsequent action taken towards him by [defendant], we hold that the district court properly granted summary judgment on the retaliation claim."). *See also Cronin v. ITT Corp.*, 737 F.Supp. 224, 232 (S.D.N.Y.) (summary judgment for employer on retaliation claim because "[plaintiff] has not offered any evidence that would fulfill the final requirement of a causal nexus between his voicing complaints ..., on the one hand, and his purportedly thwarted attempts to seek other employment, on the other."), *aff'd*, 916 F.2d 709 (2d Cir.1990).

Recognition is accorded to the cases which regard the close temporal relationship between the protected activity and the employment action as a factor relevant to causality.[12] That the factor of temporal proximity alone is not determinative is recognized in *Hollander v. American Cyanamid Co.*, 895 F.2d 80 (2d Cir.1990), in which the time intervening between the alleged discrimination and the protected activity was only three months. The court there affirmed the granting of summary judgment to the defendant finding that the plaintiff had "not offered any evidence which would fulfill the final require-

ment of a causal nexus between his filing of the agency complaint, on the one hand, and [the adverse employment action], on the other." *Id.* at 85. Therefore, the fact that Edwards' termination occurred less than one month after Interboro learned of his charge to the EEOC does not, in and of itself, establish a prima facie case of retaliatory discharge.

### a. *Plaintiff's Submissions*

Plaintiff's 3(g) statement and affidavit do not contain any "facts" regarding the causal connection between the filing of the EEOC charges and Edwards' termination. They both contain many assertions that defendant is wrong and that, in fact, plaintiff was fired in retaliation. And based upon the denial of defendant's reasons for firing him, plaintiff concludes that there is a genuine issue of fact (*i.e.*, the reason for his termination) which warrants denying the motion.

For example, plaintiff states that defendant's demand that he provide an official transcript is "just an excuse" because "they knew from the beginning that I couldn't provide that document." Edwards Aff'd at 7. He also implies that the requested-for syllabi was designed to mask defendant's discriminatory intent: "It is clear that these were just excuses so that they could get rid of me." *Id.* In his 3(g) statement, plaintiff also denies that he failed to supply course outlines and that he was asked to submit a copy of his official transcript. Plaintiff's Statement Under Rule 3(g), ¶¶ (*l*), (m) at 4. These bare denials are not facts upon which a jury could conclude that a causal connection existed between the EEOC filing and the termination. As stated above, conclusory denials do not preclude granting a summary judgment motion. Fed.R.Civ.P. 56(e) ("[a]n adverse party may not rest upon the mere

---

**12.** *See, e.g., Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986) (the final factor in establishing a prima facie case of retaliatory discharge is established if "the protected activity was closely followed by adverse actions, such as denial of a merit pay increase and documentation of conflict in appellant's file."); *Thermidor v. Beth Israel Medical Ctr.*, 683 F.Supp. 403, 411 (S.D.N.Y.1988) ("[P]roof of a causal connection between plaintiff's discharge and his filing of a employment discrimination complaint may be es-

tablished indirectly merely by a showing that the protected activity was followed closely by the alleged discriminatory treatment."); *Howard v. Holmes*, 656 F.Supp. 1144, 1148 (S.D.N.Y.1987) ("A causal connection between the protected activity and the alleged retaliatory action may be demonstrated by evidence of circumstances that justify an inference of a retaliatory motive, such as a protected activity *closely* followed by adverse actions.") (emphasis in original).

allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.")

Therefore, because Edwards has failed to come forward with any admissible evidence upon which a reasonable jury could conclude that a causal connection existed between his filing of the Charge of Discrimination and his termination, he has failed to establish a prima facie case of retaliatory discharge. *See, e.g., Johnson v. Tower Air, Inc.,* 149 F.R.D. 461, 470 (E.D.N.Y.1993) ("[plaintiff's] retaliation claim is clearly deficient since she provides no evidence that her letter of January 5 played any role in [defendant's] decision to dismiss her....").

However, even if Edwards could establish a prima facie case of retaliatory discrimination, he has also failed to come forward with any evidence that Interboro's decision to terminate his employment was pretextual.

### B. *Interboro's Legitimate, Non-discriminatory Reason for Edwards' Termination*

"Once a prima facie case is made, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions." *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991) (internal quotation marks omitted). Even assuming, *arguendo,* that plaintiff has established a prima facie case of retaliatory discharge, Interboro has established a legitimate, non-discriminatory reason for Edwards' termination; namely, his refusal to supply outlines, syllabi and an official transcript as requested by the employer. As this court held in *Sewell v. New York City Transit Authority,* 809 F.Supp. 208 (E.D.N.Y.1992), blatant employee insubordination is a legitimate reason for terminating employment.

### C. *Lack of Evidence Establishing Pretext*

The Second Circuit has explained that,
At [the point that defendant has articulated a legitimate nondiscriminatory reason for plaintiff's termination], the plaintiff must have the opportunity to demonstrate that the employer's proffered reason was

not the "true reason" for the employment decision. This may be done either by persuading the trier of fact that a discriminatory reason more likely than not motivated the employer, or by persuading the trier of fact that the employer's proffered explanation is unworthy of belief.

*Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180–81 (2d Cir.) (citations omitted), *cert. denied,* — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In other words, pretext can be established "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Long v. A.T. & T. Info. Sys., Inc.,* 733 F.Supp. 188, 200 (S.D.N.Y.1990). The burden of establishing that the motivation for plaintiff's termination was improper remains at all times with the plaintiff. *St. Mary's Honor Center v. Hicks,* — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Because this is a motion for summary judgment, the question is whether plaintiff has produced any evidence upon which a reasonable jury could determine that a "discriminatory reason more likely than not motivated [Interboro]" in terminating Edwards' employment following the filing of the EEOC charges; or that "[Interboro's] proffered explanation [in terminating Edwards] is unworthy of belief." As discussed above, the only "facts" put forward by plaintiff in support of these propositions is his denial that he failed to supply course outlines or was asked to submit a copy of his official transcript. Plaintiff's Statement Under Rule 3(g), ¶¶ (*l*), (m). *See also* Plaintiff's Memorandum of Law at 4 ("Plaintiff, by Affidavit, has submitted facts sufficient to rebut defendant's claim that dismissal was based on legitimate business reasons (failure to provide requested documentation of academic credentials and failure to file course outlines and syllabi).") . However, "plaintiff's conclusory allegations of discrimination are insufficient to withstand the defendant['s] ... cross-motion for summary judgment under Fed.R.Civ.P. 56(e)." *Sewell v. New York City Transit Authority,* 809 F.Supp. 208, 219 (E.D.N.Y.1992). *See also Thermidor v. Beth Israel Medical Ctr.,*

683 F.Supp. 403, 412 (S.D.N.Y.1988) (pretext is not established when "plaintiff merely offers conclusory statements that his performance must have been satisfactory because he was never informed of his employer's dissatisfaction until the time of his discharge.").

In his Memorandum of Law, plaintiff concludes by stating that,

> It can easily be concluded from the facts and as a result of the time frame within which plaintiff was discharged and its proximity to the filing of his EEOC complaint and its proximity to his withdrawing the claim after being rehired that employment was continued only because he filed the claim and because the claim was withdrawn, employment was no longer necessary and plaintiff was fired.

Plaintiff's Memorandum of Law at 5–6. However, as demonstrated above, plaintiff has failed to come forward with any evidence upon which a reasonable jury could conclude that Interboro's termination of his employment was pretextual.

The Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, was an enactment then long overdue and noble in its objectives. It unquestionably has served to deter, if not entirely eradicate, the pernicious practice of discrimination in employment decisions. It has, however, also unquestionably served to embolden disgruntled employees, who have been legitimately discharged because they were incompetent, insubordinate, or dishonest, to file suits alleging that they have been the victims of discrimination. The motives prompting those baseless filings may be inferred to be harassment or intimidation with a view towards being rehired. Whatever the motives, the frequency with which such cases are filed unduly burdens the federal courts and subjects innocent employers to incredible expense which they cannot recoup if successful notwithstanding 42 U.S.C. § 2000e–5(k). *See Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (attorneys' fees for successful Title VII defendants are not available unless defendant can demonstrate that the action was frivolous, unreasonable, or groundless). A reexamination of *Christians-*

*burg* in the revealing light of experience would be useful.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.

SO ORDERED.